## THE CITY OF DETROIT v. THE WABASH, ST. LOUIS AND PACIFIC RAILWAY COMPANY.

*Constitutional law—Title of act—Railroad companies—Servi* e
*of process—Station agent defined—Certiorari.*

1. An act of the Legislature purported by its *title* to provide for the *taking* of *private* property for *public* use, and for the opening, etc., of streets and·alleys, in a certain city.

    *Held,* that, taken as a whole, the title was meant to be confined to the *taking* of lands for the designated city ways, which, although differing in some respects, have always been included together in framing city charters, and that the title did not embrace a double object.

2. Under How. Stat. § 8147, as amended by Act 207, Laws of 1885, authorizing the service of papers on the *station* or *ticket* agent of a railroad company, a return of service on Wm. H. Knight, its *commercial* agent, does not show a sufficient service.

3. A *station* agent means the agent *locally* in charge of the station or depot, and *generally* it is not at the *end* of the road, but at some *intermediate* place, although there may, no doubt, be such an agent at the terminus; but the *name* cannot apply *presumptively*, if at all, to any but one who has *general* charge at the place where he acts, and there is nothing in the name "commercial agent" which necessarily indicates *local* authority or functions.

4. The jurisdiction of the Supreme Court by *certiorari* is constitutional, and not subject to revocation; but it is not usual to review by this writ what can be as well done on appeal.

Certiorari to the recorder's court of the city of Detroit to review condemnation proceedings. Argued November 11,

1886. Proceedings quashed November 17, 1886. The facts are stated in the opinion.

*Alfred Russell* and *A. C. Angell*, for respondent and plaintiff in *certiorari*.

*Henry M. Duffield*, for petitioner and defendant in *certiorari*.

CAMPBELL, C. J. Respondent brings *certiorari* to review the action of the recorder's court of Detroit in opening Harper avenue across the lines of various railways. The respondent was given only nominal damages.

The proceedings were had under a special local law of 1885, applicable only to Detroit, entitled—

" An act to provide for the taking of private property for the public use, and for the opening, extending, widening, and straightening of streets and alleys, in the city of Detroit, and to repeal act number two hundred eighty-one of the session laws of eighteen hundred eighty-three, being an act entitled 'An act to provide for the taking of private property for the public use, and for the opening of streets and alleys, by the city of Detroit.' "     Local Laws 1885, p. 338.

It is objected that the title of this act is double, and embraces more than one object; and the duplicity is said to consist in treating streets and alleys specifically, and then adding the entire subject of taking private property for all sorts of public uses.

Taking this title as a whole, we have no doubt it was meant to be confined to the taking of lands for the city ways referred to, which, although in some respects differing, have always been included together in the framing of city charters. We do not think this objection tenable.

It is further objected that no legal service is shown on respondent, or on some other railway companies. The service set up against respondent is returned as made upon "Wm. H. Knight, its commerc. ag't." This probably is meant to denote "commercial agent." As this is a service

made on different rules from that required for corporations generally, who must usually be summoned or notified through officers representing them directly, the law is well settled that it must be done in strict accordance with the statute which makes it exceptional.

In 1849, before we had any general railroad law, a statute was passed allowing service of papers in "any suit or proceeding, either in law or equity," upon conductors and weigh-masters, at any station or depot along the line, or at the end of the railroad, of such company, which was to be held as good as if otherwise made. This law continued unchanged until 1885. How. Stat. § 8147. In 1885 this section was changed, by substituting for the persons named in it, "any station agent or ticket agent," leaving the rest to stand.[1]

It is not returned that Mr. Knight was ticket agent; neither does it appear that he was station agent. A station agent means the agent locally in charge of the station or depot, and generally is not at the end of the road, but at some intermediate place. Still there may, no doubt, be a station agent at the terminus. But that name cannot apply presumptively, if at all, to any but one who has general charge at the place where he acts. In large railroads there are usually, at terminal points, distinct freight and passenger agencies, and frequently several others. There is nothing in the name "commercial agent" which necessarily indicates local authority or local functions. There is a manifest reason for changing the rule, which formerly included conductors, who had no local duties or habitation, and whose duties might stand in the way of giving attention to local suits, or leaving their trains to hunt up attorneys or other agents. Station and ticket agents, being on the spot, can communicate at their leisure with attorneys or principals. It is quite possible for a commercial agent to have duties at any point, or number of points, or away from the

---

[1] Act No. 207, Laws of 1885.

road entirely, at a distance.    If Mr. Knight had been station agent, he would probably have been called so.

This was not a good service, and disposes of the case.

We were asked, however, to pass upon another defect in the statute supposed to affect its entire validity.    Section 18 of the statute gives this Court on appeal power to review all the facts, and give judgment on law and facts, as in chancery; and it had been previously provided that no review should be had on *certiorari* except as to jurisdiction, but only appeal should lie.

It has been always held that our jurisdiction by *certiorari* is constitutional, and not subject to revocation.    But it is not usual to review by *certiorari* what can be as well done by appeal.    It is evident the Legislature did not intend to dispense with an appeal, and would not have allowed the condemnation without it.

But so far as this provision may be of doubtful validity, as interfering with the prerogatives of the jury of inquest, there is nevertheless a question whether the illegal part may not be thrown out, saving a valid appeal.    This should be done, if possible.    The present case does not require us to decide it, as counsel for the city preferred to leave it without discussion, unless some case should arise making it necessary.    We do not care to consider it under these circumstances, and, without satisfactory reasons, we should not assume there is any fatal defect.

For the other reason, the proceeding, so far as respondent is concerned, must be quashed, with costs.

The other Justices concurred.