## LOOMIS *v*. ROGERS.

1. CONSTITUTIONAL LAW—STATUTES—OBJECT EXPRESSED IN TITLE.
   The requirements of the Constitution, art. v, § 21, that no law shall embrace more than one object, which shall be expressed in its title, are met if an act centers to one main general object or purpose which the title comprehensively declares, though in general terms, and if the provisions in the body of the act not directly mentioned in the title are germane, auxiliary or incidental to that general purpose.

2. STATUTES—HIGHWAYS AND STREETS—CONSTITUTIONAL LAW.
   The Covert act, Act No. 59, Pub. Acts 1915 (1 Comp. Laws 1915, § 4671 *et seq.*), entitled, "An act to provide for the construction and improvement of highways, to borrow money therefor, and the assessment and collection of taxes for the construction thereof, and to limit the sums of money to be paid by counties for highway purposes," was solely intended to provide a system for constructing and improving highways, borrowing money therefor, with a limitation, and the inevitable taxation to ultimately cover the cost, and the provisions in the body of the act relating to the mode of raising the money when borrowing, the determination of districts specially benefited and the manner of making assessments are germane to the expressed object, so as not to render the act subject to the objection that it violates the Constitution, art. v, § 21, providing that no law shall embrace more than one object, which shall be expressed in its title.

3. SAME.
   The Covert act, although giving the execution or the administration of the law to the State highway commissioner where counties retain the township road system, is not invalid as constituting an invasion of the township right of self-government, as the improvement of highways is a public as well as a local concern, under the Constitution, art. viii, § 26, and the State necessarily has the right to designate a proper agent to carry out the work.

4. SAME — CONSTITUTIONAL LAW — TAXATION — HIGHWAYS AND STREETS.
   The constitutional question of lack of uniformity of taxa-

tion by the Covert act in providing that the cost of the improvement of a highway in counties under the county highway system shall be apportioned between the special assessment district, the affected township, and the county, while in counties in which the township system is retained ·the total amount is to be assessed against the special assessment district and the township or townships through which the road passes, is immaterial where it is not shown or claimed that any property owner within a highway improvement assessment district was assessed in excess of actual resultant benefits.

5. HIGHWAYS AND STREETS—ASSESSMENTS FOR BENEFITS—PRE- SUMPTIONS.

It must be presumed, in absence of proof, in highway improvement assessment proceedings under the Covert act, that the benefits to be received by those who pay for them, both individuals and townships, equal the costs assessed against them.

6. SAME—TAXATION—UNIFORMITY—CONSTITUTIONAL LAW.

The constitutional requirement of just and uniform taxation is met when a highway improvement assessment is within the limit of benefits received, is just, and uniform throughout the created assessment district.

7. SAME.

A special assessment for the improvement of a highway under the Covert act is not a "tax" within the constitutional provision as to uniformity of taxation.

8. STATUTES—CONSTITUTIONAL LAW—TAXATION.

The legislature did not exceed its powers, in enacting the Covert act, by placing a just portion of the burden of a highway improvement on a specially benefited assessment district and levying assessments for special benefits conferred upon the property, although benefits are also conferred thereby upon the community or State at large.[1]

9. SAME—PARTIAL INVALIDITY—EFFECT.

The concluding clause of section 17 of the Covert act, relating to apportionment of the cost of a highway assessment improvement according to benefits and providing an arbitrary maximum and minimum percentage limit, while out of harmony with the rest of the act, is not an interde-

---

[1]On rural highway as a local improvement the cost of which may be assessed against tributary property upon the basis of special benefits, see note in 40 L. R. A. (N. S.) 173.

pendent part of the rest of the statute essential to accomplish its moving purpose and chief object for which it was enacted forcing the inference that the law would not have been passed without it so as to render the rest of the act invalid because of its invalidity.

Appeal from Ionia; Houghton, J., presiding. Submitted June 27, 1917. (Docket No. 145.) Decided July 26, 1917.

Bill by Arthur P. Loomis against Frank F. Rogers, State highway commissioner, to restrain the construction of a highway. From a decree dismissing the bill, plaintiff appeals. Affirmed.

*Alfred R. Locke* and *George E. Nichols,* for plaintiff.

*Alexander J. Groesbeck,* Attorney General, and *Leland W. Carr,* Assistant Attorney General, for defendant.

STEERE, J. In this proceeding plaintiff contests the constitutionality of the so-called Covert act, being Act No. 59, Pub. Acts 1915 (1 Comp. Laws 1915, § 4671 *et seq.*), entitled:

"An act to provide for the construction and improvement of highways, to borrow money therefor, and the assessment and collection of taxes for the construction thereof, and to limit the sums of money to be paid by counties for highway purposes."

The controversy also incidentally involves the validity of Act No. 125, Pub. Acts 1917, passed at the last session of the legislature (1917) and given immediate effect, amending the Covert act of 1915 in many particulars, apparently intended to remedy defects and omissions in the details of procedure and operation, amongst other things elaborating the title; but the scheme of the law and principles involved as originally

enacted are not altered, and it appears to be conceded that as to the controlling questions raised here they stand or fall together. The transactions to which this controversy relates were inaugurated under the original act of 1915, and the briefs of counsel adopt it as their theme. Section 1 of this act thus declares the legislative intent in enacting it:

"This act is intended to provide an additional method for constructing and improving public highways, and to be in force where a portion of the cost of constructing or improving highways is paid by special assessment upon lands benefited thereby."

Seventy-four sections follow, elaborating a method for improving highways in sections or districts upon petition of adjacent landowners, involving assessments according to benefits closely analogous in procedure and phraseology to the Michigan drain law. Where the county road system has been adopted execution or administration of the law is committed to the county road commissioners, and in counties yet clinging to the township system to the State highway commissioner. In either case action is initiated by a proper application signed by the "owners of a majority of the frontage of lands fronting upon a highway or portion of a highway, not less than two miles in length," which it is desired to have improved.

The facts presented in this case are not in dispute. The section of highway sought to be improved by this method is a thoroughfare in the county of Ionia, extending several miles in a westerly direction through certain townships of the county, from where the so-called South River road intersects State reward road No. 1080 to the east limits of the village of Saranac, in Boston township. It has been opened and in use as a highway for more than 25 years, under control of the authorities of the different townships in which it lies. The county of Ionia has never adopted the

county road system, and on February 14, 1916, a petition for the improvement of this highway was filed under the Covert act with the State highway commissioner, signed by a majority of the owners of land fronting along the highway.

Proceeding upon this petition the State commissioner of highways made the requisite examination and preliminary order, caused survey and a plat to be made with specifications of the proposed improvements with an estimate of the cost, and determined such improvement was necessary for the public benefit; gave notice of holding hearings and heard objections, fixed the assessment district, times of payment, etc., advertised for bids to make the improvements specified, payments therefor to be from sale of bonds based upon a special assessment district and at large upon certain townships, let a contract for making such improvements, and gave notice of the sale of bonds to defray the cost of the same, but no bids were received for their purchase, owing to questions raised as to the constitutionality and legality of the proceedings, and because of such complications further proceedings were delayed until the 3d of May, 1917, when the commissioner again advertised to receive bids for the sale of bonds, and plaintiff, who is the owner of 50 acres of land within the proposed assessment district, filed, in the circuit court of Ionia county, on a date not disclosed by the record, the pleading which is the foundation of this action, sometimes called in the record a "petition" and sometimes a "bill of complaint," detailing at length the various steps taken in the matter, alleging their invalidity on numerous stated constitutional grounds, praying "use of process of subpœna and the people's writ of injunction," that defendant be perpetually enjoined from offering for sale and selling said highway bonds, and the special assessment for construction of said road be set aside, canceled, and

held for naught. An order to show cause was thereupon issued, and answer made to the same by defendant, followed by a hearing before the court and decree dismissing "said bill of complaint."

No contention is made that defendant failed to comply with all requirements of the statute, nor is it claimed that the special assessment levied, or to be levied, on petitioner's land exceeded the actual value of benefits which would result, or that the public benefit does not equal, or exceed, the proportion of cost of the improvements assessed against the various townships concerned, or that the aggregate cost of construction of the highway will exceed the benefits resulting therefrom. Defendant's answer admits the facts alleged in the petition, and the sole question presented here is the constitutionality of said Act No. 59.

While other objections are raised which need not be discussed, though not overlooked, the various grounds upon which the constitutionality of this act is most seriously attacked, and to which the briefs of counsel are chiefly devoted, condense to the three concrete propositions that its title is insufficient, it violates constitutional requirements as to uniformity of taxation and due process of law, and invades the guaranteed right of local self-government.

The claim of defective title is based on the familiar provision in section 21, art. 5, of our Constitution that no law shall embrace more than one object, which shall be expressed in its title. This provision has proved a tempting source of attack on the validity of statutes with which parties are dissatisfied, for few laws of any length are enacted where the objection cannot be plausibly urged as to details and auxiliary provisions incidental to the main purpose of the legislation appearing in the body of the act and not itemized in the title. The Covert act embraces 75 sections, authorizing, outlining, and providing the means and legal ma-

chinery for an intended additional method of constructing and improving highways. An abridgment of all those sections is not essential to a sufficient title. While it contains various related provisions not directly indicated or enumerated in the title, under the construction of this constitutional requirement, as many times reviewed by this court, if the act centers to one main general object or purpose which the title comprehensively declares, though in general terms, and if provisions in the body of the act not directly mentioned in the title are germane, auxiliary, or incidental to that general purpose, the constitutional requirement is met.

A title is but a descriptive caption, directing attention to the subject-matter which follows. It is obvious that one reading the title would readily understand that the general object of the law was a measure for constructing and improving highways by some method not already fully provided, for which purpose money might be borrowed and taxes assessed and collected within certain limits, and that to ascertain the particulars of the method by which the object is to be accomplished, resort must naturally be had to the body of the act.

In the early case of *Connecticut Mutual Life Ins. Co.* v. *State Treasurer*, 31 Mich. 6, the brief title under consideration was "An act to establish an insurance bureau." This was held a sufficient compliance with the Constitution to sustain a comprehensive law creating the office of insurance commissioner, defining his powers and duties, containing numerous provisions relating to taxation of insurance companies, the reciprocal rights and duties of the State and those carrying on insurance, etc., it being said that by this title "the legislature must be understood as saying that it [the act] was made up of such provisions and details as were deemed suitable for the object."

As before stated, the Covert act is in many respects analogous to and evidently modeled after the State drain law in many of its provisions. The title of that law (Act No. 254, Pub. Acts 1897 [1 Comp. Laws 1915, § 4870 *et seq.*]) is as follows:

"An act to provide for the construction and maintenance of drains, and the assessment and collection of taxes therefor, and to repeal all other laws relative thereto."

Subsequent amendments have not enlarged this title. A preceding general drain law (Act No. 227, Pub. Acts 1885) with an identical title was attacked as unconstitutional in *Hall* v. *Slaybaugh*, 69 Mich. 484 (37 N. W. 545). The court there held that the object of the act was sufficiently covered by the title, saying:

"It is difficult to conjecture anything pertaining to a drain in any way that would not come properly under this title if made the subject of legislation."

That law was as broad and comprehensive in its provisions regarding drains as is the Covert act upon the subject of highways.

Act No. 149, Pub. Acts 1893, of which the present county road law is in its main features a re-enactment, amongst its many provisions authorized raising money for improvement and construction of highways by taxation and the issuance of bonds. It was entitled:

"An act to provide for a county and township system of roads and to prescribe the powers and duties of the officers having the charge thereof."

It was attacked in *Shearer* v. *Bay County Supervisors*, 128 Mich. 552 (87 N. W. 789), as unconstitutional on the ground that it violated the prohibition against embracing more than one object in its title, etc. This court there held that the indicated general purpose of the act was to provide for a system of highways, and it was not open to the objection raised.

As to the sufficiency of a general title to cover a provision in the body of the act creating special assessment districts to pay the cost of particular improvements, see *City of Detroit* v. *Railway Co.*, 63 Mich. 712 (30 N. W. 321).

Plainly the general and sole purpose of this act as indicated by its title is to provide a system for constructing and improving highways, borrowing money therefor, with a limitation, and the inevitable taxation to ultimately cover the cost. The mode of raising the money when borrowing, the determination of districts specially benefited, and the manner of making assessments are congruous matters, germane to the expressed object of the act. Under the authorities cited and abundance of others to which they lead, this act cannot be held invalid on the ground that its object is insufficiently expressed in the title.

The objection that this act violates constitutional provisions protecting local self-government is directed against the authority it confers and duties it imposes upon the State highway commissioner in those counties where the county road system has not been adopted. The local governments involved, whose rights are claimed to be invaded, are the county and certain of the townships composing it. That portion of article 8 of our present Constitution, entitled "Local Government," when dealing directly with those local governmental units under the subtitles "Counties" and "Townships," vests them with no exclusive prerogatives, and imposes upon them no duties as to highways, nor does it make any reference to the subject beyond authorizing counties to raise not exceeding $1,000 in any one year for bridge purposes and providing for the election of one commissioner of highways and an overseer for each district in a township "whose powers and duties shall

197—Mich.—18.

be prescribed by law." It does especially provide that the legislature may confer upon both counties and townships "such powers of a local, legislative and administrative character, not inconsistent with the provisions of this Constitution, as it may deem proper."

The Constitution of 1850 also provided for the township highway officers above mentioned, and it was held in *Hubbard* v. *Township Board of Springwells,* 25 Mich. 153, that, while the legislature might modify their powers it could not abolish their constitutional offices or deprive them of all their functions, citing *People* v. *Hurlbut,* 24 Mich. 44 (9 Am. Rep. 103). In the *Hurlbut Case* it was said, in substance, that appointments for purely municipal purposes could only be made by municipal authority, and appointments made by the legislature of members of the board of public works for the city of Detroit, as permanent officers for a full or specified part of a provided term, imposed upon the municipality a control of its purely local affairs by officials selected from without in contravention of implied constitutional restrictions upon such legislation. It may be said that these strongly reasoned decisions, which are not to be questioned as applied to the cases in which they were written and the Constitution then in force, sound the keynote of numerous other cases which may be found in the history of legislation and litigation relating to highways prior to the adoption of our present Constitution. The Constitution of 1850 lent further support to the found inference restraining State interference with local management and control of highways, by the provision in section 9, art. 14, that:

"The State shall not be a party to, or interested in, any work of internal improvement, nor engaged in carrying on any such work, except in the expenditure of grants to the State of land or other property."

With these restraints on broader legislation, con-

trol of the construction and maintenance of public thoroughfares was relegated chiefly to the several townships through which they ran, or in which they were located, each under township laws acting independently by asserted right of local self-government, on the theory that highways were strictly a matter of local concern. That the township highway system standing alone, though an important factor, was wholly inadequate and illy adapted to such general development of highways throughout the State as conditions demanded ultimately made itself imperatively manifest, and to open the way for more direct State participation section 9, art. 14, of the old Constitution was amended by proper plebiscite, authorizing the State to be a party to or interested in the improvement of "the public wagon roads," or highways. A State highway department under a State commissioner had been created and provided for by the legislature of 1903, but, manifestly recognizing its constitutional infirmities, this law was recast, elaborated, and reenacted after the constitutional amendment was adopted. Act No. 146, Pub. Acts 1905. When the new Constitution of 1908 was framed and adopted, not only was the amendment of 1905 retained, authorizing the State to engage in the work of internal improvements by improving, or aiding in improving, highways (section 14, art. 10), but, manifestly mindful of the implied intent and meaning of the old Constitution as it had been interpreted in restriction of highway legislation, it was provided by section 26, art. 8, that:

"The legislature may by general law provide for the laying out, construction, improvement and maintenance of highways, bridges and culverts by counties, districts and townships; and may authorize counties or districts to take charge and control of any highways within their limits for such purposes. The legislature may also by general law prescribe the powers and duties of boards of supervisors in relation

to highways, bridges and culverts; may provide for county and district road commissioners to be appointed or elected, with such powers and duties as may be prescribed by law; and may change and abolish the powers and duties of township commissioners and overseers of highways."

Conceding, as has been said, and is contended here, that the principle of local self-government is basic and thoroughly imbedded in the jurisprudence of this State, that principle and the authority of the courts to so declare necessarily find their source in the Constitution of the State and laws not in violation of it. When those constitutional limitations found in the old Constitution are removed from the new and legislation which the old Constitution was construed as impliedly forbidding is expressly authorized by the new, the basic principle of local self-government vanishes as to it. While yet recognizing local interest in and a reasonable local control over highways, the present Constitution makes plain that their improvement for public travel is not to be regarded as solely and exclusively a matter of local concern, but of general public interest and State-wide importance. So viewing it, those who framed and adopted the new Constitution in the light of the old as interpreted in former decisions gave the legislature authority to commit the State to a system of highway improvements either directly or by aiding minor governmental entities authorized by law to make them, and, if deemed expedient to that end, change or entirely abolish the local powers and duties of township highway officers, which the former Constitution was construed as prohibiting.

It is conceded that the contemplated improvements are to be made upon an old established highway of permanent character and part of a State trunk line road. Although the immediate locality through which the road runs would be especially interested and benefited, it would be a violent legal fiction against the

actual facts to hold that its improvement for travel is exclusively a matter of local concern in which the State at large and general public have no interest. Clearly the legislature is authorized by the Constitution to provide by general law for such improvements as are contemplated here, and that it is not required to commit the project to the township highway authorities is made manifest in the same paragraph of the Constitution, providing that their powers and duties may be abolished by the legislature. In the counties which have not adopted the county road system there are no other highway officials with authority over county roads. The State highway commissioner is chosen at large by the electors of the State, representing as a highway officer all parts of the State, holden, in matters pertaining to his official duty, to represent the interests of each township and person in the State, as is the county road commissioner, elected at large in a county adopting that system, to represent in the line of his duties his county as a whole and each township and person in it. With the right of the State to engage in the improvement of public wagon roads there necessarily goes the right to provide some proper agent or official to administer the law and carry on the work of improvement authorized. Contingent designation of the State highway commissioner where county highway commissioners are not available is no more an invasion of the asserted township right of local self-government than is the designation of county commissioners. In either case the township has a voice in their election to the offices they hold, and each in his official capacity represents the township as a part of the county or State.

Upon the subject of highway taxes, assessments, and performance of authorized work the following deductions from the weight of authority stated as general rules in **13 R. C. L.** subpage 159, are illuminating:

"The legislature may itself levy a tax for highway purposes, or it may delegate that power to municipal or *quasi* municipal corporations within its borders. * * * But when the State at large or the general public has an interest in the construction or maintenance of such works, the legislature may assume the active direction of affairs by such agents as it may see fit to appoint, and may apportion whatever expenses may be incurred among such municipalities as may be found to be especially benefited, without first stopping to ask their consent. It may therefore make provision for particular highways, and may provide for their construction or alteration by agencies of its own at the expense of those upon whom it sees fit to cast the burden. And it is generally held that, as against legislation of this character, no plea can be set up of a right of local self-government, implied in the nature of our institutions. So the legislature may compel a municipality, without its consent, to assume the expense of acquiring and maintaining public highways within its corporate limits. * * * The legislature may provide for the creation of road or taxing districts comprising lands in the neighborhood of a rural highway, and for levying taxes on property situated in such districts to pay the whole or a part of the cost of constructing or repairing the highway."

The proportion of State aid to be paid because of such improvements, which is based on the mileage, is to be paid to counties under the county road system and to townships *pro rata* to their assessment where the county road law has not been adopted. The plan for directly paying the cost of a proposed improvement under this law is based on the assessment of benefits, and it is provided in counties under the county system the cost of the improvement shall be apportioned between the special assessment district, the affected townships, and the county, while in counties which have not adopted the county road system the total amount shall be assessed against the special assessment district and the township or townships through which the road passes. It is contended that

this violates the constitutional requirement of uniformity in taxation because it places a greater burden upon townships in the latter case than in the former, and, while recognizing that the county is benefited, the law relieves it from assessment. So far as this case is concerned the objection is disposed of by the fact that it is not shown or claimed that petitioner or any other property owner within the assessment district was assessed in excess of actual resultant benefits, and therefore it is immaterial to him how the public portions of the burden are borne as between the county and township. In *Voigt* v. *City of Detroit*, 123 Mich. 547 (82 N. W. 253), it is said:

"There is no claim in the bill that complainant's property is not benefited by the proposed improvement in excess of the amount assessed, nor is there any claim that he was not allowed to be heard in relation to the amount assessed against his property.  *  *  * We do not think it can be said that complainant's property is taken without due process of law."

Presumptively benefits to be received by those who pay them, both individuals and townships, equal the costs assessed against them, and until the contrary appears neither is in a position to complain. As a proposition of general application the constitutional requirement of just and uniform taxation is met when the assessment is within the limit of benefits received, is just, and uniform throughout the created assessment district. So far as direct benefits by reason of close proximity to the proposed improvement are concerned, the improvement is in a sense local, although also, in a wider sense, a public improvement of general concern, and the special assessment for benefits arising by reason of proximity is not in the true meaning of the word as used in the constitutional limitation a "tax," which has reference to general revenues for the purpose of maintaining and carrying on the govern-

ment where the benefits are alike enjoyed by all without reference to the special benefits. The element of special benefits is a distinguishing feature between taxes and assessments for benefits. It is well settled in this State that a general exemption of realty from taxation does not extend to such assessments based on special benefits resulting from proximity—sometimes called taxes for special improvements. That proposition is summed up in 2 Elliott on Roads and Streets (3d Ed.), § 663, as follows:

"A distinction is made between local assessments and taxes levied for general revenue purposes. The question has been before the courts time and time again, and the almost unruffled current of judicial opinion is, that an assessment for a local improvement is not a tax within the meaning of the constitutional provision requiring uniformity of taxation. Local assessments are not ordinary taxes levied for the purpose of sustaining the government, but they are charges laid upon individual property because the property upon which the burden imposed receives a special benefit which is different from the general one which the owner enjoys in common with others as a citizen of the commonwealth. They may be a species of tax, and the power to levy them is generally referred to the taxing power, but, as already indicated, they are not taxes within the meaning of that term as generally used in constitutional restrictions and exemptions,"

—and reasserted in *City of Detroit* v. *Weil,* 180 Mich. 593 (147 N. W. 550).

This law was not intended to, and does not, impose the entire cost of the improvement upon adjoining lands or townships. Its purpose, as declared in the first section, is to provide an additional method to be in force, "where a portion of the cost of constructing or improving highways is paid by special assessment upon lands benefited thereby." The amount of such assessment is limited to the special benefits resulting from the improvement as determined after all in inter-

est are given opportunity to be heard. State aid under existing appropriate laws is recognized and contemplated. The State can only act upon local initiative, pursuant to a petition by a majority of those owning adjoining lands, who presumably are most seriously affected and vitally interested. The legality of assessments for special benefits resulting from improvements of streets in villages and cities was long ago settled beyond contention, but there has been in the past a decreasing divergence of authority upon application of the rule to country roads. While there may be a difference in degree and demand, in the principle underlying assessment for special benefits resulting from public improvement of an adjacent highway, we fail to discover wherein the difference lies between streets and public roads. In *Murray* v. *Smith,* 117 Minn. 490 (136 N. W. 5, 40 L. R. A. [N. S.] 173, Am. & Eng. Ann. Cas. 1913D, 548), where that subject is carefully considered and the conclusion reached that such an assessment, authorized in proceedings, analogous to its drainage law, is permissible under the constitution of that State, the court says:

"The weight of authority today seems to be to the effect that a highway may be a local improvement, and that an assessment of lands specially benefited may be sustained. 1 Page & Jones, Taxation by Assessment, § 322; *Bauman* v. *Ross,* 167 U. S. 548 (17 Sup. Ct. 966); *Law* v. *Turnpike Co.,* 30 Ind. 77; *Monroe County Com'rs* v. *Harrell,* 147 Ind. 500 (46 N. E. 124); *Spaulding* v. *Mott,* 167 Ind. 58 (76 N. E. 620); *Jones* v. *Town of Tonawanda,* 158 N. Y. 438 (53 N. E. 280); *Seanor* v. *Whatcom County Com'rs,* 13 Wash. 48 (42 Pac. 522)."

We find nothing in our present Constitution which forbids the legislature placing a just portion of the burden of a highway improvement on a specially benefited assessment district and levying assessments for special benefits conferred upon the property, although

benefits are also conferred thereby upon the community or State at large. Much greater legislative powers than exercised here are recognized by the United States Supreme Court in the absence of constitutional prohibition. In *Williams* v. *Eggleston*, 170 U. S. 304 (18 Sup. Ct. 617), affirming *Bulkeley* v. *Williams*, 68 Conn. 131 (35 Atl. 24, 421, 48 L. R. A. 465), which contains an exhaustive discussion of many of the questions involved here. the court said, speaking through Justice Brewer:

"Neither can it be doubted that, if the State Constitution does not prohibit, the legislature, speaking generally, may create a new taxing district, determine what territory shall belong to such district and what property shall be considered as benefited by the proposed improvement. And in so doing it is not compelled to give notice to the parties resident within the territory or permit a hearing before itself, one of its committees, or any other tribunal, as to the question whether the property so included within the taxing district is in fact benefited."

The concluding' clause of section 17 of Act No. 59, relating to apportionment according to benefits, provides an arbitrary maximum and minimum percentage limit which it is urged is inconsistent with the adopted rule of assessment for benefits and nullifies it. In the present case no claim is made that the assessments are not made according to benefits, and the clause complained of is not involved unless, as urged on constitutional grounds, it invalidates the whole act. This clause is an interjection manifestly out of harmony with the general theory of the act, and not so inseparably connected with its purpose and substantial provisions as to furnish the moving consideration for enacting the law.

"An unconstitutional provision or section in the statute will not affect the other provisions of the law unless they are essentially and inseparably connected in substance." *Mathias* v. *Cramer*, 73 Mich. 5 (40

N. W. 926) ; *Klatt* v. *Wayne Probate Judge,* 159 Mich. 203 (123 N. W. 542).

The clause is not an interdependent part of the rest of the statute essential to accomplish its moving purpose and the chief object for which it was enacted forcing the inference that the law would not have been passed without it. With it eliminated the statute is a complete, unobjectionable, and workable law.

We find no occasion to disturb the conclusions reached by the learned circuit judge who first considered the case, and his decree dismissing the complaint will stand affirmed, but without costs.

KUHN, C. J., and STONE, BIRD, BROOKE, and FELLOWS, JJ., concurred with STEERE, J.

OSTRANDER, J. I reserve opinion upon the point last decided, concurring, however, in affirming the decree.

MOORE, J., concurred with OSTRANDER, J.