MOOAHESH v DEPARTMENT OF TREASURY

Docket No. 122480. Submitted April 7, 1992, at Detroit. Decided August 17, 1992, at 9:20 A.M.

Kamel Mooahesh, a 1987 winner of the Michigan Lottery who will receive annual installments of his prize until 2006, brought a class action in the Wayne Circuit Court against the Department of Treasury, the Bureau of State Lottery, and others, seeking equitable and declaratory relief against the enforcement of 1988 PA 516, which, effective December 30, 1988, repealed the statutory exemption of state lottery winnings from state and local taxes. The court, Marvin R. Stempien, J., granted summary disposition for the plaintiff, ruling 1988 PA 516 unconstitutional for violating the title-object clause of Const 1963, art 4, § 24. The defendants appealed.

The Court of Appeals *held*:

1. The circuit court did not clearly err in certifying the class represented by the plaintiff to include all winners of state lottery prizes payable in installments, at least one of which was received or was receivable on or before December 31, 1988, and to exclude all such winners who chose not to opt out of a similar class action then pending in the Court of Claims, *Shay v Michigan*. The class, as certified by the circuit court, is narrower than that proposed by the plaintiff and thus is more favorable to the defendants. Neither case law nor court rule precludes the maintenance of two class actions with respect to the repeal of the tax exemption for state lottery winnings. Under the circuit court's class certification, no winner can be a member of both the *Mooahesh* and *Shay* classes.

2. The circuit court had jurisdiction of the plaintiff's claims for equitable and declaratory relief concurrent with the Court of Claims, as well as jurisdiction of his constitutional claims. Contrary to the defendants' contention, constitutional claims against the state are not triable only in the Court of Claims.

REFERENCES

Am Jur 2d, Gambling §§ 17 *et seq*; State and Local Taxation §§ 191 *et seq*.

State lotteries: actions by ticketholders against state or contractor for state, 40 ALR4th 662.

The circuit court correctly ruled that the legal remedy of annual petitions for tax refund under MCL 205.30(2); MSA 7.657(30)(2) provides inadequate relief to the plaintiff and should not prevent him from seeking equitable relief.

3. The circuit court erred in ruling that 1988 PA 516 violated the title-object clause of the constitution. Section 1 of the act provided that state lottery winnings are not to be subtracted from taxable income in tax years after 1987, and § 2 repealed the provision of the Lottery Act that had exempted state lottery winnings from state and local taxes. The single object of 1988 PA 516 was raising revenue to meet deficiencies in state funds. It did not violate the single-object rule because its single object was stated in its title, and the repeal of the statutory exemption of state lottery winnings from state taxes and the mandatory inclusion of state lottery winnings in taxable income was consistent with that object. The act's title gave fair notice to legislators and others interested in its object that only matters germane to raising revenue would be enacted and that the statutory exemption of state lottery winnings from state taxes would be repealed.

4. On remand, the parties and the circuit court, in the interest of judicial economy, should consider the Court of Appeals decision in *Shay v Michigan,* unpublished opinion per curiam, decided February 11, 1991 (Docket No. 120806), which held that the state committed a breach of contract in repealing the tax exemption for state lottery winnings.

Affirmed in part, reversed in part, and remanded.

Taxation — Lotteries — Repeal of Tax Exemption for State Lottery Prizes — Constitutional Law — Title-Object Clause.

1988 PA 516 did not violate the title-object clause of the Michigan Constitution in repealing the Lottery Act provision that had allowed the exemption of state lottery prizes from state and local taxes (MCL 432.34; MSA 18.969[34], Const 1963, art 4, § 24).

*Richard A. Lenter,* for the plaintiff.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Keith D. Roberts* and *George H. Weller,* Assistant Attorneys General, for the defendants.

Before: WEAVER, P.J., and SULLIVAN and CORRIGAN, JJ.

CORRIGAN, J. In this class action, plaintiff and other winners of the Michigan lottery[1] sought relief from the repeal of the statutory exemption of state lottery winnings from Michigan taxes. 1988 PA 516; MCL 432.34; MSA 18.969(34). Defendants appeal the trial court's grant of plaintiff's motion for summary disposition and its ruling that 1988 PA 516 violated the title-object clause of the Michigan Constitution. Const 1963, art 4, § 24. We affirm in part and reverse in part.

In 1987, Kamel Mooahesh, a member of a lottery club, shared one-half of a one million dollar prize won in the state lottery, MCL 432.1 *et seq.*; MSA 18.969(1) *et seq.* The prize money has since been paid and will be paid to him until 2006 in $25,000 annual installments.

At the time Mooahesh purchased his lottery ticket, § 34 of the Lottery Act expressly provided: "No state or local taxes of any kind whatsoever shall be imposed upon the proceeds from a prize awarded by the state lottery." MCL 432.34; MSA 18.969(34). This tax exemption existed continuously from the lottery's inception in 1972 until 1988. On December 30, 1988, however, 1988 PA 516 was enacted. A portion of the act provides:

> For a tax year beginning after 1987, in calculating taxable income, a taxpayer shall not subtract from adjusted gross income the amount of prizes won by the taxpayer under [the Lottery Act]. [MCL 206.30(6); MSA 7.557(130)(6).]

[1] Plaintiff's complaint asserted that the potential class consisted of 1,000 Lotto or Super Lotto winners, plus tens of thousands of winners of smaller prizes. In the motion for class certification, plaintiff described 832 potential class members.

In addition, the act expressly repealed MCL 432.34; MSA 18.969(34):

> Section 34 of the McCauley-Traxler-Law-Bow-man-McNeely lottery act, Act No. 239 of the Public Acts of 1972, being section 432.34 of the Michigan Compiled Laws, is repealed effective January 1, 1988. [1988 PA 516, § 2.]

On March 14, 1989, Mooahesh, individually and on behalf of a class consisting of other lottery winners before December 31, 1988, filed a six-count complaint in the Wayne Circuit Court against the Department of Treasury and the Bureau of State Lottery. The complaint was later amended to add two individual defendants, the State Treasurer and the Commissioner of the Bureau of State Lottery. All six counts arose from the passage and enforcement of 1988 PA 516.

The amended complaint alleged that the state breached its contract and that 1988 PA 516 violated the state and federal constitutions. Plaintiff also pleaded other counts not pertinent to this appeal.[2] Each of the counts alleged the $10,000 jurisdictional amount. Plaintiff's generalized prayer for relief sought (1) a declaratory judgment that the state had breached its contract with plaintiff and other members of the class; (2) a declaratory judgment that 1988 PA 516 was unconstitutional; (3) segregation of payments collected pursuant to 1988 PA 516 pending resolution of the dispute; and (4) payment of costs and attorney fees.

---

[2] Plaintiff's claims included breach of contract and promissory estoppel, violation of 42 USC 1983 against the individual defendants, violation of various provisions of the Michigan Constitution and the Consumer Protection Act [MCL 445.901 *et seq.*; MSA 19.418(1) *et seq.*], misrepresentation and conversion. The court dismissed the counts relating to 42 USC 1983 and the Consumer Protection Act.

Defendants moved for summary disposition, contending that exclusive jurisdiction was vested in the Court of Claims. MCL 600.6419; MSA 27A.6419. This motion was denied as to the state and the lottery bureau, but granted as to the treasurer and the lottery commissioner, who were dismissed from the case. Plaintiff has not appealed that order.

Plaintiff then moved for summary disposition, seeking a declaration that 1988 PA 516 violated the title-object clause of the Michigan Constitution, Const 1963, art 4, § 24. That motion was granted.

At the same time that plaintiff brought this action, a similarly situated class filed suit in the Court of Claims. The class was essentially defined as all state lottery winners before December 31, 1988, who had received awards or installment payments in 1988, who filed 1988 state income tax returns, and who paid state income taxes under protest. The Court of Claims granted summary disposition for the plaintiffs, holding that 1988 PA 516 did not apply to those who won the lottery before December 30, 1988. This Court affirmed. *Shay v Michigan,* unpublished opinion per curiam, decided February 11, 1991 (Docket No. 120806). The Court of Claims ruled solely on the breach of contract claim.

## I. CERTIFICATION OF THE CLASS

The lower court certified the class represented by plaintiff as follows:

All winners of State of Michigan lottery prizes, which prizes were paid in installment payments, provided that at least one installment payment was received or receivable on or before December

31, 1988; the class shall not include those persons or entities who did not choose to exclude themselves from [a] certain class action presently. pending in the Michigan Court of Claims, said action being known as *Shay v State of Michigan* . . . .

On appeal, defendants contend that this certification was in error because the *Mooahesh* class could not be distinguished from the *Shay* class. We do not agree.

This Court will reverse an order of class certification only where it is clearly erroneous. *Grigg v Michigan Nat'l Bank,* 72 Mich App 358, 365; 249 NW2d 701 (1976), rev'd on other grounds 405 Mich 148; 274 NW2d 752 (1979); *Northview Const Co v St Clair Shores,* 395 Mich 497, 507; 236 NW2d 396 (1975). The lower court did not clearly err in certifying the *Mooahesh* class.

MCR 3.501(A)(1) describes the requirements for a class action:

One or more members of a class may sue or be sued as representative parties on behalf of all members in a class action only if:

(a) the class is so numerous that joinder of all members is impracticable;

(b) there are questions of law or fact common to the members of the class that predominate over questions affecting only individual members;

(c) the claims or defenses of the representative parties are typical of the claims or defenses of the class;

(d) the representative parties will fairly and adequately assert and protect the interests of the class; and

(e) the maintenance of the action as a class action will be superior to other available methods of adjudication in promoting the convenient administration of justice.

Neither the explicit language of the court rule

nor the corresponding federal court rule, FR Civ P 23, requires that a defined class be unique, i.e., that all its members be ineligible for membership in any other class. Defendants have cited no legal authority for this proposition and this Court has discovered no judge-made law imposing any such limitation. Moreover, as presently defined, no one can be a member of both the *Mooahesh* and the *Shay* classes. Thus, we have no legal or factual basis for concluding that the lower court's decision to certify the *Mooahesh* class was clearly erroneous.

Defendants also complain that the class as certified differs from the class identified in the complaint. Although defendants do not identify the alleged discrepancies, we assume the problem lies in the paragraph of the complaint that refers to "all persons who have won Lotto and/or Super Lotto prizes in the State of Michigan Lottery Contest since its inception in 1973." The trial court's order refers to "All winners of State of Michigan lottery prizes, which prizes were paid in installment payments, provided that at least one installment payment was received or receivable on or before December 31, 1988." These descriptions are functionally identical. The trial court's definition is, if anything, *more* restrictive than that in the complaint, so any inconsistency works to defendants' advantage. We see no reason to reverse the decision of the circuit court on this ground.

## II. CIRCUIT COURT JURISDICTION

We next find that the circuit court had jurisdiction of the constitutional issues. Further, we find that plaintiff requested equitable relief and has no adequate remedy at law.

The portions of MCL 600.6419; MSA 27A.6419 pertinent to the present dispute provide:

> Except as provided in [MCL 600.6419a; MSA 27A.6419a and MCL 600.6440; MSA 27A.6440], the jurisdiction of the court of claims, as conferred upon it by this chapter, shall be exclusive. . . . The court has power and jurisdiction:
>
> (a) To hear and determine all claims and demands, liquidated and unliquidated, ex contractu and ex delicto, against the state and any of its departments, commissions, boards, institutions, arms, or agencies.

MCL 600.6419a; MSA 27A.6419(1) provides, in pertinent part:

> [T]he court of claims has concurrent jurisdiction of any demand for equitable relief and any demand for a declaratory judgment when ancillary to a claim filed pursuant to [MCL 600.6419; MSA 27A.6419]. The jurisdiction conferred by this section is not intended to be exclusive of the jurisdiction of the circuit court over demands for declaratory and equitable relief conferred by [MCL 600.605; MSA 27A.605.]

The Court of Claims plainly has exclusive jurisdiction over contract claims against the state and its agencies. It does not have exclusive jurisdiction over demands for declaratory and equitable relief (although, of course, it does have ancillary jurisdiction when applicable). See *77th Dist Judge v Michigan,* 175 Mich App 681, 699; 438 NW2d 333 (1989) (the Court of Claims lacked power to issue injunction in a case involving a district judge's claim of an equal protection violation because of unequal salaries and benefits), and *AuSable Manistee Action Council, Inc v Michigan,* 182 Mich App 596, 599-600; 452 NW2d 832 (1989) (injunction to enforce land-use restrictions proper in circuit court because the Court of Claims did not have jurisdiction over purely equitable claims).

While various counts in the complaint sought money damages, the lower court dismissed many of the counts sounding in tort. The lower court accepted plaintiff's argument that his breach of contract claim merely provided a basis for equitable relief and for declaratory judgment. The circuit court, upon due consideration, concluded that plaintiff was not seeking money damages, but rather a determination whether it was constitutional to take plaintiff's property and a return of property taken improperly. We believe that the circuit court's analysis was correct. The relief plaintiff seeks is more in the nature of an equitable remedy than damages. Plaintiff does not seek damages for an unrelated injury, but rather the return of money allegedly properly belonging to him. Thus, the Court of Claims did not have exclusive jurisdiction; the claims for equitable relief were properly brought in the circuit court.

As for the declaratory judgment, although the Court of Claims may have jurisdiction, the circuit courts enjoy concurrent jurisdiction pursuant to MCL 600.6419a; MSA 27A.6419(1). In *77th Dist Judge, supra,* this Court held that "declaratory judgment is appropriate in the Court of Claims only if the underlying dispute or controversy is of a nature lending itself to an eventual remedy in money damages against the state or one of its branches." 175 Mich App 700. In *AuSable, supra,* where the plaintiff's *only* request was for equitable relief, the Court found jurisdiction proper only in the circuit court. 182 Mich App 599-600. We conclude that, although the Court of Claims has authority to issue a declaratory judgment, the circuit court also has jurisdiction.

The circuit court indisputably had jurisdiction to rule on plaintiff's constitutional claim. See *Kostyu v Dep't of Treasury,* 170 Mich App 123; 427 NW2d

566 (1988); *Meda v City of Howell,* 110 Mich App 179, 183; 312 NW2d 202 (1981). In *Kostyu,* a taxpayer contested the Treasury Department's procedure for estimating his tax liability. In its analysis, this Court said:

> In matters of taxation, the circuit court continues to have jurisdiction to entertain constitutional issues concerning the validity of tax laws . . . . [*Id.* at 128.]

See also *Bales v Hwy Comm,* 72 Mich App 50, 54; 249 NW2d 158 (1976) (a constitutionally created right can be protected in equity); *Thom v State Hwy Comm'r,* 376 Mich 608, 628; 138 NW2d 322 (1965) (no governmental immunity for constitutional claims).

The Court of Claims has exclusive jurisdiction of claims and demands against the state ex contractu and ex delicto. See, e.g., *Greenfield Const Co, Inc v Hwy Dep't,* 402 Mich 172, 230; 261 NW2d 718 (1978); *Advisory Opinion on Constitutionality of 1976 PA 240,* 400 Mich 311, 320; 254 NW2d 544 (1977); *Taylor v Auditor General,* 360 Mich 146; 103 NW2d 769 (1960). That court was not created to provide a forum for testing the constitutional validity of laws. Indeed, its jurisdiction is carefully limited to "claims and demands . . . ex contractu and ex delicto" and ancillary equitable and declaratory matters. To hold, as defendants have argued, that constitutional issues are triable *only* in the Court of Claims ignores the statutory authority that created the court.

Defendants have also asserted that plaintiff should be limited to his legal remedy, i.e., that regardless of its jurisdiction, the trial court should not award any equitable relief because plaintiff has an adequate remedy at law. That remedy is

found in MCL 205.30(2); MSA 7.657(30)(2), which provides in part:

> A taxpayer who paid a tax claimed not to be due may petition the department [of Treasury] for refund of the amount paid within the time period specified as the statute of limitations . . . .

Jurisdiction of courts of equity is recognized where "the facts involved in litigation are such that a claimed legal remedy, although available, will not afford adequate relief." *Wild v Wild,* 360 Mich 270, 276-277; 103 NW2d 607 (1960). A legal remedy cannot be said to give full and ample relief if it is not as effectual as that which equity affords. *Fireman's Fund Ins Co v Harold Turner, Inc,* 159 Mich App 812, 816; 407 NW2d 82 (1987), citing *Powers v Fisher,* 279 Mich 442, 447; 272 NW 737 (1937).

The class here has an available but inadequate legal remedy. The prizes were to be paid in annual installments for twenty years. If the class is restricted to the refund mechanism of § 30, its members would be required to avail themselves of the payment and petition procedure every year, running the risk of inconsistent results and possibly a sequence of appeals to the Tax Tribunal and this Court.

The case of *Knott v Flint,* 363 Mich 483; 109 NW2d 908 (1961), is analogous. The plaintiffs, a number of business owners, objected to a special property tax assessment against them. *Id.* at 485-490. The defendant claimed that the plaintiffs could have paid the taxes and protested them, rather than seeking equitable relief. *Id.* at 492. The Court determined that that remedy, if available, would be inadequate:

> Obviously this would have involved a large num-

ber of actions, particularly in view of the fact that the assessments were required to be collected in 2 annual installments. That such a course of procedure, if available, would have worked a hardship on plaintiffs is obvious.

If the course of action suggested was available under applicable law it does not necessarily follow that equity was without jurisdiction. This Court has suggested in prior cases that notwithstanding the possibility of following a legal remedy equity may take jurisdiction under circumstances imposing undue hardship. [*Id.* at 492-493.]

The remedy proposed by defendants in this case would "work an obvious hardship." An equitable order is appropriate.

The complete remedy plaintiff sought was not available in the Court of Claims. Jurisdiction in the circuit court therefore was proper.

### III. CONSTITUTIONALITY OF 1988 PA 516

Defendants next contend that the lower court erred in ruling that 1988 PA 516 violates Const 1963, art 4, § 24, the title-object clause, which provides in part: "No law shall embrace more than one object, which shall be expressed in its title." We agree.

The question presented is governed by a de novo standard of review. *Seals v Henry Ford Hosp,* 123 Mich App 329; 333 NW2d 272 (1983).

The lower court held that the act violates the one-object provision because repealing the lottery exemption is an object distinct from raising revenue. The lower court also held that the act violates the title-object requirement because its title did not specify that it was intended to repeal the tax exemption on lottery prizes. We are not persuaded that the lower court correctly analyzed this question.

Section 1 of 1988 PA 516 amended MCL 206.30; MSA 7.557(130) by providing:

> For a tax year beginning after 1987, in calculating taxable income, a taxpayer shall not subtract from adjusted gross income the amount of prizes won by the taxpayer under the McCauley-Traxler-Law-Bowman-McNeely Lottery Act . . . being sections 432.1 to 432.47 of the Michigan Compiled Laws. [MCL 206.30(6); MSA 7.557(130)(6).]

Section 2 of 1988 PA 516, immediately following, then repealed § 34 of the Lottery Act, MCL 432.34; MSA 18.969(34).

We first consider the holding that the act violated the single-object rule. As Michigan courts have held in numerous contexts, the one-object requirement should be construed reasonably. See, e.g., *Kuhn v Dep't of Treasury,* 384 Mich 378, 387; 183 NW2d 796 (1971) (state income tax act not unconstitutional); *Green v Court Administrator,* 44 Mich App 259, 263; 205 NW2d 306 (1972) ("reasonableness is the hallmark" of cases interpreting art 4, § 24). Further, every legislative act is presumed constitutional as against constitutional challenges. *Hall v Calhoun Co Bd of Supervisors,* 373 Mich 642, 649; 130 NW2d 414 (1964). Moreover, every reasonable presumption is indulged in support of an act's constitutionality. *Builders Square v Dep't of Agriculture,* 176 Mich App 494; 440 NW2d 639 (1989).

> [A]n act may contain any provision which directly relates to, carries out, and implements the principal object of the act. Legislation should not be invalidated merely because it contains more than one means of attaining its primary object. [*City of Livonia v DSS,* 423 Mich 466, 499; 378 NW2d 402 (1985), aff'g *Greentrees Civic Ass'n, Inc*

*v Pignatiello,* 123 Mich App 767; 333 NW2d 350 (1983).]

The Legislature may enact new legislation or amend any act to which the subject of the new legislation is "germane, auxiliary, or incidental." *DSS, supra* at 500. A statute may authorize the doing of all things that are in furtherance of the general purpose of the act without violating the one-object limitation of art 4, § 24. *Kuhn, supra* at 388. See also, e.g., *Midland Twp v State Boundary Comm,* 401 Mich 641, 654-654; 259 NW2d 326 (1977).

The purpose of the single-object rule is to avoid bringing into one bill diverse subjects that have no necessary connection. *Builders Square, supra* at 497 (item pricing and deceptive advertising act not unconstitutional). In *Detroit Bd of Street Railway Comm'rs v Wayne Co,* 18 Mich App 614, 622-623; 171 NW2d 669 (1969), this Court aptly summarized the single-object rule in the context of a dispute over a tax repeal:

> It might have been better draftsmanship to have placed the provision concerning the taxability of municipal transportation utilities in the general property tax law (where one might expect to find it) rather than in the home rule act. There is, however, no constitutional requirement that the legislature do a tidy job in legislating. It is perfectly free to enact bits and pieces of legislation in separate acts or to tack them on to existing statutes even though some persons might think that the bits and pieces belong in a particular general statute covering the matter. *The constitutional requirement is satisfied if the bits and pieces so enacted are embraced in the object expressed in the title of the amendatory act and the act being amended.* [Emphasis supplied.]

As the *DSS* Court said, "Legislation should not

be invalidated merely because it contains more than one means of attaining its primary object." 423 Mich 499.

It is sufficient that "the act centers to one main general object or purpose which the title comprehensively declares, though in general terms, and if provisions in the body of the act not directly mentioned in the title are germane, auxiliary, or incidental to that general purpose . . . ." [*People v*] *Milton,* 393 Mich 246-247 [224 NW2d 266 (1974)], quoting *Loomis v Rogers,* 197 Mich 265, 271; 163 NW 1018 (1917). [423 Mich 501.]

"To require that every end and means necessary to the accomplishment of this general object should be provided for by a separate act relating to that alone, would not only be senseless, but actually render legislation impossible." *Banner Laundering Co v Bd of Tax Admin,* 297 Mich 419, 436; 298 NW 73 (1941) (use tax constitutional).

The Legislature's object in the act at issue was to raise revenue. The title of 1988 PA 516 reads:

An act to amend sections 30, 262, 520, and 527a of Act No. 281 of the Public Acts of 1967, entitled "An act to meet deficiencies in state funds by providing for the imposition, levy, computation, . collection, assessment, and enforcement by lien and otherwise of taxes on or measured by net income; to prescribe the manner and time of making reports and paying the taxes, and the functions of public officers and others as to the taxes; to permit the inspection of the records of taxpayers; to provide for interest and penalties on unpaid taxes; to provide exemptions, credits and refunds of the taxes; to prescribe penalties for the violation of this act; to provide an appropriation; and to repeal certain acts and parts of acts," sections 30, 520, and 527a as amended by Act No. 254 of the Public Acts of 1987 and section 262 as amended by

Act No. 190 of the Public Acts of 1983, being sections 206.30, 206.262, 206.520, and 206.527a of the Michigan Compiled Laws; to add section 273; and to repeal certain acts and parts of acts on specific dates.

The object of such an act is "necessarily broad-ranging and comprehensive." *Midland Twp, supra* at 654.

Revenues can be raised in any number of ways, as history has made obvious. Taxes may be imposed, increased, or rearranged. The object of "meet[ing] deficiencies in state funds" may reasonably be found to include the repeal of a tax exemption, even if that exemption does not appear in any act specifically devoted to taxation. While it might have been "better draftsmanship," *Bd of Street Railway Comm'rs, supra,* to have provided for a separate amendment to the Lottery Act, the inclusion of the repeal of the tax exemption provision in an act amending the income tax laws does not render the act in violation of the single-object requirement.

Neither are we persuaded that 1988 PA 516 violates the requirement that the object of an act "shall be expressed in its title." It is well established that the title of an act need not be an index of its provisions. *Builders Square, supra* at 499; see also, e.g., *Kull v Michigan State Apple Comm,* 296 Mich 262, 268; 296 NW 250 (1941) (tax imposed on apple production valid although the act also created an agency for the promotion and advertising of apples). If indexing were required, the title would not pass muster, because it plainly fails to list the repeal of the tax exemption. The principle instead is that the general object and not all the details and incidents of a statute need be indicated in the title. *Ace Tex Corp v Detroit,* 185 Mich App

609, 616; 463 NW2d 166 (1990) (inclusion of "sunset" provision in city tax on utility use did not make it unconstitutional). As the Supreme Court said in *People ex rel Wayne Prosecuting Atty v Sill,* 310 Mich 570, 574; 17 NW2d 756 (1945): "The title is good if it is a descriptive caption, directing attention to the subject matter which follows . . . or if it be expressive of the purpose and scope of the enactment."

The title of an act must give fair notice to legislators and others interested in the object of the law to assure them that only matters germane to the object expressed in the title will be enacted. *Continental Motors Corp v Muskegon Twp,* 376 Mich 170, 181; 135 NW2d 908 (1965). The "object" of a law is its "general purpose or aim." *DSS, supra* at 497.

> The constitutional provision was designed mainly to prevent the legislature from passing laws not fully understood. . . . [I]t was intended that the legislature, in passing an act, should be fairly notified of its design . . . and that legislatures and parties interested might understand from the title that only provisions germane to the object therein expressed would be enacted . . . and to avoid bringing into one bill subjects diverse in their nature and having no necessary connection, but with a view to combining in their favor the advocates of all—or what is commonly spoken of as logrolling in legislation. [*Maki v East Tawas,* 385 Mich 151, 157-158; 188 NW2d 593 (1971), quoting *State Mutual Rodded Fire Ins Co v Foster,* 267 Mich 118; 255 NW 174 (1934).]

That the compilers of the law have placed a portion of 1988 PA 516 in the tax code and another portion in the lottery regulations is not dispositive:

> Not infrequently there will be a number of existing acts to which the new legislation would be germane, auxiliary or incidental. The legislative choice will not be held invalid merely because an alternative location for the new legislation might appear to some more appropriate. [*Milton, supra* at 241.]

Perhaps the strongest recent authority for plaintiff's position concerning inadequate notice of the repeal appeared in OAG, 1987-1988, No 6438, pp 80, 90 (May 21, 1987). In that opinion (and indeed in a series of opinions) the Attorney General concluded that the failure of the title of the City Utility Users Tax Act, MCL 141.801 *et seq.*; MSA 5.3194(301) *et seq.*, to reflect its "sunset" or termination date, in effect the repeal of that act's provisions, violated Const 1963, art 4, § 24. The Attorney General opined that the act therefore could not terminate as scheduled on June 30, 1988. In *Ace Tex, supra* at 617, this Court rejected the Attorney General's analysis that the lack of notice of repeal in the title of the act vitiated the termination date:

> Although we would agree that a repeal in one act which affects another act could jeopardize the requirement of notice guaranteed by our constitution if the repeal was not declared in the first act's title, we have not been persuaded that a self-repealer presents the same problem. By declaring its purpose to provide the procedure for imposing and collecting such a tax, we believe the act's title challenges the reader's attention to provisions in the act which might affect its duration.

We do not find that the title of 1988 PA 516 provided insufficient notice to "the legislators and parties interested" that the tax exemption on

lottery winnings was being removed.[3] The act's title indicated that it was "An act to amend . . . an act to meet deficiencies in state funds by providing for the imposition . . . of taxes on . . . net income . . . ." Thus, definitions of "net income," wherever found, would of necessity be included. Further, the amendment applied to an existing act, one of whose functions was "to provide exemptions [from taxation] . . . ." An amendment to an act "to provide exemptions" may reasonably reach changes or elimination of such exemptions. The "object" of eliminating the lottery exemption is not so diverse in character as to violate art 4, § 24.

As set out in *Builders Square, supra* at 497, the goal of the title-object clause is notice, not restriction of legislation. The notice aspect is violated where the subjects are so diverse in nature that they have no necessary connection. Despite its failure to state explicitly in the title that the Lottery Act exemption was being repealed, we are able to declare that the subjects are not so diverse as to have "no necessary connection."

Our decision that 1988 PA 516 does not offend the title-object clause makes it unnecessary to address defendants' argument that if § 2 of the act is unconstitutional, it should be severed, leaving § 1 to repeal MCL 432.34; MSA 18.969(34) by implication.

### IV. CONCLUSION

We conclude:

1. The circuit court properly certified plaintiff's class.

---

[3] At oral argument, defendants' counsel pointed to evidence in the legislative history of 1988 PA 516 indicating that the Legislature was, indeed, aware of the presence of the proposed change in the lottery exemption.

2. The circuit court had jurisdiction to decide plaintiff's equitable claims and requests for declaratory judgment.

3. Plaintiff was entitled to seek equitable relief because his remedy at law was inadequate.

4. The circuit court had jurisdiction to determine the constitutionality of 1988 PA 516, but erred in finding the act unconstitutional for violation of the title-object clause.

Consequently, we remand this matter to the court below for proceedings consistent with this opinion. We direct the court and the parties to the decision in *Shay v Michigan, supra,* in the interest of judicial economy.

We do not retain jurisdiction. No costs, neither party having prevailed in full.

Affirmed in part, reversed in part, and remanded.