VILLAGE OF KINGSFORD *v.* CUDLIP.

1. MUNICIPAL CORPORATIONS—CONSTITUTIONAL LAW—INCORPORATION OF CITIES AND VILLAGES.

   Power vested in legislature to provide for incorporation of cities and villages is in no way limited by Constitution (article 8, §§ 20, 21).

2. SAME—POWER TO PROVIDE FOR ANNEXATION OF TERRITORY TO VILLAGES—STATUTES.

   Legislature had power, under Constitution (article 8, §§ 20, 21), to provide that votes of those residing in township outside of territory sought to be annexed to village should be counted collectively with vote in village in determining question of annexation (1 Comp. Laws 1929, §§ 1766, 1767), although wisdom of said legislation is not apparent.

3. STATUTES—CONSTRUCTION.

Courts may not tamper with clear and unequivocal meaning of words used in statute.

4. SAME—CONSTITUTIONAL LAW—SUFFICIENCY OF TITLE—MUNICIPAL CORPORATIONS.

Title of Act No. 278, Pub. Acts 1909, as amended by Act No. 95, Pub. Acts 1913, providing for ''incorporation of villages and for revising and amending their charters,'' is sufficient to sustain provisions for change of boundaries.

5. MUNICIPAL CORPORATIONS—INCORPORATION OF VILLAGES—CHANGE OF BOUNDARIES—CONSTITUTIONAL LAW.

Power conferred on legislature by Constitution (article 8, § 20) to provide by general law for incorporation of villages includes change of boundaries when needed.

6. COSTS—PUBLIC QUESTION.

On reversal of decree in suit involving legality of annexation of territory to village, public question being involved, no costs are allowed.

Appeal from Dickinson; Bell (Frank A.), J. Submitted January 6, 1932. (Docket No. 45, Calendar No. 36,131.) Decided April 4, 1932.

Bill by Village of Kingsford, a municipal corporation, and Albert Gustafson and others, taxpayers, against W. S. Cudlip, and others as Dickinson county board of canvassers to enjoin consolidation of certain territory with the village. Decree for plaintiffs. Defendants appeal. Reversed, and bill dismissed.

*Ray Derham,* for plaintiffs.

*Paul Rahm,* Prosecuting Attorney, for defendants.

SHARPE, J. On August 7, 1931, an election was held pursuant to the provisions of Act No. 278, Pub. Acts 1909, as amended by Act No. 395, Pub. Acts 1919, to

determine whether certain territory in the township of Breitung should be annexed to the village of Kingsford. The proceedings incident to the taking of a vote on the question are not attacked. Section 4 of the act (1 Comp. Laws 1929, § 1766) provides that the question "shall be submitted to the qualified electors of the district to be affected" by the change of boundaries. Section 5, as amended in 1929 (1 Comp. Laws 1929, § 1767), reads as follows:

"The district to be affected by every such proposed incorporation, consolidation or change of boundaries, shall be deemed to include the whole of each city, village or township from which territory is to be taken or to which territory is to be annexed: *Provided, however,* That proposed incorporations, consolidations or changes of boundaries shall be submitted to the qualified electors residing within the territory proposed to be incorporated or residing within the village to which territory is to be annexed as the case may be, and also to the qualified electors of the city, village or township from which the territory to be taken is located and at the election, when the said question is voted upon, the city, village or township shall conduct the election in such manner as to keep the votes of the qualified electors in the territory proposed to be incorporated or annexed or detached in a separate box from the one containing the votes from the remaining portions of such city, village, or township, and if the returns of said election shall show a majority of the votes cast in the district proposed to be incorporated or annexed, voting separately, to be in favor of the proposed incorporation or change of boundary as the case may be, and if a majority of the electors voting in the remainder of the district to be affected as herein defined, voting collectively, are in favor of the proposed incorporation or change of boundary as the case may be, then such territory shall become

incorporated as a village or shall become a part of the corporate territory of the village or shall be detached therefrom, as the case may be: *Provided further,* That in case there are no qualified electors residing within the territory proposed to be detached, or annexed, if a majority of electors voting in the remainder of the district to be affected, as herein defined, are in favor of the proposed change of boundary, then such territory shall become a part of the corporate territory of the village or shall be detached therefrom, as the case may be: *Provided further,* That the question of incorporating a new village from territory located in a township or townships shall be determined by a majority of the votes cast at an election at which only the electors residing within the territory proposed to be incorporated shall vote.''

The count disclosed that in the territory to be annexed 193 votes were cast in favor of annexation and 4 against; in the village of Kingsford 517 for and 683 against, and in the township, not including the territory to be annexed, 302 for and 24 against. It thus carried in the territory to be annexed, and ''in the remainder of the district to be affected,'' as defined in the statute, there were 819 votes cast for and 707 against annexation. The returns of the election were made to the county clerk, and, pending the canvass thereof by the board of county canvassers, the plaintiff village and some of its taxpayers filed the bill of complaint herein, praying for an injunction restraining the consolidating of the vote of the village with that of the territory in the township not included in the territory to be annexed and its certification to the defendant county clerk by said board. The defendants answered, admitting the material facts alleged in the bill, and prayed for its dismissal. The case was submitted on bill and

answer. Plaintiffs had decree, from which defendants have appealed.

It is plaintiffs' claim that section 5, above quoted, is unconstitutional in that it violates the provisions of sections 20 and 21 of article 8 of our State Constitution. These sections read as follows:

"SEC. 20. The legislature shall provide by a general law for the incorporation of cities, and by a general law for the incorporation of villages; such general laws shall limit their rate of taxation for municipal purposes, and restrict their powers of borrowing money and contracting debts.

"SEC. 21. Under such general laws, the electors of each city and village shall have power and authority to frame, adopt and amend its charter and to amend an existing charter of the city or village heretofore granted or passed by the legislature for the government of the city or village and, through its regularly constituted authority, to pass all laws and ordinances relating to its municipal concerns, subject to the Constitution and general laws of this State."

The purpose of these and other provisions which follow undoubtedly was to secure to cities and villages a greater degree of home rule than they formerly possessed. The provision for a general law for their incorporation was intended to confer upon them almost exclusive rights in the conduct of their affairs, not in conflict with the Constitution or general laws applicable thereto.

The power vested in the legislature to provide for their incorporation is in no way limited. The authorities are united as to its extent.

"Unless restricted by the constitution, the legislature may not only establish the original limits of the municipal corporations, but may alter or change

the boundaries at any time by directly annexing or detaching territory contiguous or otherwise, dividing or consolidating corporations, or, it may authorize such changes to be made by general or special law unless forbidden by the constitution, and this may be done without the consent and even against the protest of the corporation, the local authorities or the inhabitants of the communities affected. This is regarded as a purely discretionary legislative prerogative, and unless the obligations of contracts or vested rights of third persons are impaired by such action, in accordance with the well established rule, the judiciary cannot interfere." 1 McQuillin Municipal Corporations (2d Ed.), § 284.

"The creation of municipal corporations, and the conferring upon them of certain powers and subjecting them to corresponding duties, does not deprive the legislature of the State of that general control over their citizens which was before possessed. It still has authority to amend their charters, enlarge or diminish their powers, extend or limit their boundaries, consolidate two or more into one, overrule their legislative action whenever it is deemed unwise, impolitic, or unjust, and even abolish them altogether in the legislative discretion, and substitute those which are different." 1 Cooley's Constitutional Limitations (8th Ed.), p. 393.

See, also, 1 Dillon on Municipal Corporations (5th Ed.), § 355; 43 C. J. p. 106; 19 R. C. L. p. 732; *Laramie Co.* v. *Albany Co.*, 92 U. S. 307.

The legislature in 1889, by Local Act No. 455, consolidated the cities of East Saginaw and Saginaw into one municipality. While litigation ensued (*Smith* v. *City of Saginaw*, 81 Mich. 123), the power of the legislature to so enact was not questioned.

Act No. 279, Pub. Acts 1909 (1 Comp. Laws 1929, § 2228 *et seq.*), provided for the incorporation of

cities. The provision therein for the annexation of territory, and the vote to be taken thereon, is similar to that in the village act. In *Cook* v. *Kent Board of Canvassers,* 190 Mich. 149, the result of an election held for that purpose was attacked. The section of the statute was quoted in full, and no suggestion made by the court that the legislature exceeded its power in defining "the district to be affected" by the change of boundaries.

The trial court was apparently influenced in his decision by what was said by this court in *Bray* v. *Stewart,* 239 Mich. 340, 344:

"The territory taken into the village when incorporated is in no way separated from the township. It still remains a part thereof, is subject to taxation therein, and its residents are electors thereof."

It was, however, further said:

"For some reason, however, the legislature in 1919 amended section 5 to read as above set forth. The change made might have some application where a consolidation or change of boundaries is desired, as was the case in *Oakman* v. *Board of Sup'rs of Wayne Co.,* 185 Mich. 359, but the necessity of securing the assent of any but those who are electors in the territory to be incorporated where such incorporation is sought is not apparent."

In the *Bray Case,* a new village was sought to be incorporated, and the amendment to section 5 was held to be controlling of the electors who had the right to vote thereon. In *Oakman* v. *Board of Sup'rs of Wayne Co., supra,* the annexation of territory to the city of Detroit under Act No. 279 was involved. It was there said:

"In Act No. 279 it will be noted that provision is made for an election in not only the municipality from which the territory is proposed to be detached

but also in the municipality to which the annexation is proposed to be made. If the act stopped there, counsel's argument would have much force, but it goes further and provides that the votes of those residing in the particular territory to be annexed shall be kept separate, and that, if a majority of those residing therein shall consent thereto, the annexation shall be made. In other words, the act not only requires a majority vote of all those residing in both municipalities, but requires a majority vote of those residing in the particular territory.''

The wisdom of permitting the votes of those residing in the township outside of the territory sought to be annexed to be counted collectively with the vote in the village is not apparent, but in our opinion it must be held that the legislature under the constitutional provision had the power to so provide.

''Courts are not to tamper with the clear and unequivocal meaning of words used in a statute. There can be no departure from the plain meaning of a statute on grounds of its unwisdom or of public policy.'' *Handy* v. *Township of Meridian*, 114 Mich. 454, 457.

The act as passed in 1909 (Act No. 278) was entitled, ''An Act to provide for the incorporation of villages and for changing their boundaries.'' By an amendment thereto in 1913 (Act No. 95) the title was amended to read: ''An act to provide for the incorporation of villages and for revising and amending their charters,'' and that title has been since retained.

Act No. 279, relating to cities, had a similar title when enacted in 1909, but the title was amended by Act No. 5, Pub. Acts 1913. It also omitted the provision for changing boundaries.

Both of these acts have been many times before this court, and, so far as we have been able to dis-

cover, this is the first time the sufficiency of the present titles has been assailed. Both the legislature and the courts have treated these titles as sufficient to sustain the provisions for change of boundaries. The necessity of such changes from time to time is apparent, and in our opinion the power conferred upon the legislature by the Constitution "to provide by a general law for the incorporation" may fairly be said to include the change of boundaries when needed.

The decree entered is reversed and set aside, and one may be here entered dismissing the bill of complaint. As a public qustion is involved, no costs will be allowed.

CLARK, C. J., and McDONALD, POTTER, NORTH, FEAD, WIEST, and BUTZEL, JJ., concurred.