TOWNSHIP OF GROSSE ILE v. SAUNDERS.

1. TAXATION—EXEMPTIONS—MILITARY PURPOSES—ARMORIES—AVIA-
TION BASE—ARMY AND NAVY.

Real and personal property occupied for military purposes by
Michigan naval force as United States naval reserve aviation
base, *held*, exempt from taxation under provisions of 1 Comp.
Laws 1929, §§ 692, 3395, exempting "armories" from taxa-
tion.

2. SAME.

Where land was subject to taxation at time board of review
held its final session, it was not exempt for that year, although
negotiations for leasing it for military purposes were then
pending and were afterward completed, rendering it exempt
from taxation thereafter (1 Comp. Laws 1929, §§ 692, 3395).

3. SAME.

Land leased for military purposes at time board of review held
its final session was not subject to assessment, and should have
been stricken from roll.

POTTER, NORTH, and FEAD, JJ., dissenting.

Appeal from Michigan State Tax Commission.
Submitted January 19, 1933. (Docket No. 145, Cal-
endar No. 36,867.)  Decided April 4, 1933.

Petition by Richard T. Brodhead, Commanding
Officer of Michigan Naval Force, to exempt from
taxation property in township of Grosse Ile leased
for military purposes.  Petition denied.  Brod-
head appealed to State Tax Commission.  From
order of Edwin F. Saunders, chairman of Michigan
State Tax Commission, granting exemption, the
township and M. S. Harlan, taxpayer, appeal.
Modified and affirmed.

*Beaumont, Smith & Harris* (*M. S. Harlan,* of counsel), for township and Harlan.

*Patrick H. O'Brien,* Attorney General, *Vincent D. Gorman* and *Hugh E. Wilson,* Assistants Attorney General, for Saunders and Brodhead.

McDONALD, C. J. This is an appeal from an order of Edwin F. Saunders, chairman of the State tax commission, granting taxation exemption on certain lands in the township of Grosse Ile, Wayne county, Michigan.

The Michigan naval reserve airport is a unit of the United States naval reserve. The State of Michigan acquired a five-acre strip of land on the southern tip of Grosse Ile, on which it expended $100,000, and the Federal government expended $500,000 to establish and equip an airport, which, with land containing about 379 acres subsequently leased from the receiver of the Aircraft Corporation, a private organization, and the Curtis Wright Flying Service, Inc., is used by the Michigan naval force as a United States naval reserve aviation base.

With the exception of the five-acre parcel, these lands, buildings, and equipment were placed on the assessment roll for the year 1932 by the assessor of Grosse Ile township. Richard T. Brodhead, commanding officer of the Michigan naval force, protested the assessment before the township board of review, on the ground that the property was being used for military purposes and was not legally assessable under the laws of the State of Michigan; but the board held that it was not exempt, and refused to strike it from the assessment roll. On appeal to the Michigan State tax commission, an exemption was granted, and the plaintiffs appealed.

The question is whether the real and personal property in question occupied for military purposes as a United States naval reserve aviation base is exempt from taxation under the provisions of 1 Comp. Laws 1929, §§ 692, 3395.

Section 692 reads:

"Armories erected by counties, cities, private corporations, corporations composed of national guard companies or private individuals, and used by organizations of the permanent organized militia, shall be exempt from all taxes ordinary or extraordinary, whether levied by the State or by counties or municipalities the same as other State property is exempt."

Section 3395 reads:

"The following real property shall be exempt from taxation: * * * Tenth: All land dedicated to the public, and actually used as a park and any monument ground or any armory belonging to any military organization, and not used for gain or any other purposes."

It is the contention of the defendants that, upon leasing the properties in question, they became a part of the "armory" operated as the Michigan naval reserve aviation base for military purposes.

The stipulated facts show that the Michigan naval force is a unit of the United States naval reserve organized under the national defense act of 1925 (34 USCA, § 751 *et seq.*); that from the aviation bases established in various cities there operate 22 naval reserve squadrons, 15 naval squadrons, and 7 marine squadrons; that the Michigan base is responsible for the training squadron, a fighting squadron, and a service squadron, which are important units in our national defense; and that the lands in question are adaptable to such use and are

necessary to carry out the purposes for which the Michigan base was established.

There is no doubt that these lands are used for military purposes; but the plaintiffs claim that they are not armories within the meaning of 1 Comp. Laws 1929, § 692, and are, therefore, not exempt from taxation.

To give the word "armories" the narrow meaning contended for by the plaintiffs would defeat the purpose of the statute, which, as indicated by its title, was "To increase the efficiency of the military establishment of the State of Michigan." In its strict sense, an armory is a building where arms, ammunition, and instruments of war are stored, but in connection therewith it has been the custom to maintain grounds for drilling purposes and target practice. Such grounds are as much a part of the armory as the building itself. Together they constitute a military establishment. New inventions and modern methods have increased the use to which armories are adapted. They have increased the instruments of war and the military needs in the use of armories. It was the purpose of the legislature to exempt from taxation all such military establishments. The lands in question are a part of a military establishment, and as such were intended by the legislature to be included in "armories" as used in the statute. They are, therefore, exempt from taxation "the same as other State property is exempt."

But it is contended by the plaintiff that the lands were not exempt when the supervisor of Grosse Ile made the assessment and the board of review approved it. We think this contention is correct as to the Detroit Airport Corporation land. The lease of this land from the receiver was not approved by

the United States district court for the eastern district of Michigan, southern division, until July 15, 1932. Negotiations for the lease were pending when the board of review held its final session on June 14, 1932, but it had not been obtained when the board had power to strike the property from the assessment roll. It was subject to taxation for the 1932 taxes at that time, and though it became exempt thereafter, there was no one clothed with authority to correct the assessment roll. See *Iron Mountain Public Schools* v. *O'Connor,* 143 Mich. 35.

As to the land leased from the Curtis Wright Flying Service, Inc., by the defendants, the lease was obtained on May 25, 1932. The land was not subject to assessment at the time the board of review met, and should have been stricken from the roll.

The assessment against the Detroit Airport Corporation land for the 1932 taxes is approved. It should not have been stricken from the assessment roll. With this modification, the order of the State tax commission is affirmed. Other questions have been considered, but we do not deem it necessary to discuss them.

CLARK, SHARPE, WIEST, and BUTZEL, JJ., concurred with McDONALD, C. J.

FEAD, J. *(dissenting).* The question of whether an airport, privately owned but used by the State military forces, should be exempted from taxation is for the legislature. The present inquiry is whether such an airport is an "armory erected" within the meaning of the exemption law, 1 Comp. Laws 1929, § 692.

It has long been the rule, often declared, that statutes exempting private property from taxation are to be strictly construed. As long ago as *Lefevre*

v. *Mayor, etc., of Detroit,* 2 Mich. 587, it was held
that a statute exempting from taxation "all houses
of public worship" did not exempt the grounds
upon which the buildings stood. The rule requires
statutory language, susceptible of different con-
structions, to be contracted to restrict exemption
rather than expanded to permit it, and prohibits the
construction claimed by defendants.

Moreover, the implications of the statute deny the
exemption even though a broad presumption be in-
dulged that the legislature intended the law to fit
into future conditions produced by inventions in
military science and not known when the law was
enacted.

Section 692 is the last of four consecutive sections
dealing with armories. The three preceding sec-
tions concern erection of armories by the State and
in them "armory" and "erected" unmistakably are
used with reference to the construction of buildings.
The rule of context carries the same meaning into
the last section.

The construction claimed would exempt areas for
drill grounds, larger spaces for rifle ranges, broad
acres for flying fields, and many miles for big gun
practice. Yet the statute does not mention addi-
tional land, set its limits, nor authorize any person
to measure it for exemption. The lack of specifica-
tions or limitations upon the extent of land included
in the exemption demonstrates that the legislature
considered that the term used, "armory erected,"
carries its own boundaries and needs no other lim-
itation because its application to buildings only is
clear. The power to exempt private property from
taxation, embraced within the other construction,
is so extraordinary and unrestrained as, of itself, to

deny such intention of the legislature in the absence of unequivocal statutory words of grant.

In my opinion, the land at bar is not exempt from taxation, and the order of the State tax commission should be set aside, and the officers of the township directed to proceed to the levy and collection of taxes on the premises.  No costs will be awarded.

POTTER and NORTH, JJ., concurred with FEAD, J.