DETROIT BOARD OF STREET RAILWAY COMMISSIONERS
*v.* COUNTY OF WAYNE

OPINION OF THE COURT

1. TAXATION—COUNTY TAXES—HOME RULE CITY—TRANSPORTATION UTILITY.

Transportation utilities owned by home rule cities are not obligated to pay county taxes (CL 1948, § 117.4f as amended by PA 1965, No 116).

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 4, 5, 9]  51 Am Jur, Taxation § 563.
[2]  51 Am Jur, Taxation §§ 413, 414.
[3]  50 Am Jur, Statutes § 223.
[6]  51 Am Jur, Taxation § 563.
[7]  50 Am Jur, Statutes §§ 183–185, 190.
[8]  50 Am Jur, Statutes §§ 180, 181.
[10]  51 Am Jur, Taxation §§ 1172, 1173.
[11]  50 Am Jur, Statutes § 180 *et seq.*
[12]  50 Am Jur, Statutes § 384 *et seq.*
[13]  50 Am Jur, Statutes § 159 *et seq.*

2. TAXATION—PROPERTY TAX—CHANGE IN STATUS.

Statute providing that property is not to be removed from the property tax rolls if it was subject to taxation on tax day, regardless of any change in the taxable status of such property since that day, does not apply to changes in the status of the property brought about by new legislation (MCLA § 211.29).

3. STATUTES—CONSTRUCTION—LEGISLATIVE INTENT.

Courts construing legislation should attempt to determine what the legislative intent was.

4. TAXATION — COUNTY TAXES — TRANSPORTATION UTILITY — EXEMPTION — REFUND.

Statute which became effective July 2, 1965, which provided that transportation utilities owned by home rule cities no longer were obligated to pay county taxes *held,* not intended to require counties to repay municipal transportation utilities any portion of the taxes paid before the statute became effective (CL 1948, § 117.4f as amended by PA 1965, No 116).

5. TAXATION — COUNTY TAXES — TRANSPORTATION UTILITY — EXEMPTION — STATUTE — EFFECTIVE DATE.

Statute which became effective on July 2, 1965, which provided that transportation utilities owned by home rule cities were no longer obligated to pay county property taxes *held,* to excuse such transportation utilities from taxes which were payable after the statute became effective even though taxes were assessed before the statute became effective (CL 1948, § 117.4f as amended by PA 1965, No 116).

6. TAXATION—WORDS AND PHRASES—LOCAL TAXES—COUNTY TAXES.

The term "local taxes" as used in statute requiring that transportation utilities owned by home rule cities must pay state and local property taxes as if privately owned does not include county taxes (MCLA § 117.4f).

7. CONSTITUTIONAL LAW—STATUTES—OBJECT—TITLE OF STATUTE.

No statute may embrace more than one object, which must be expressed in its title (Const 1963, art 4, § 24).

8. CONSTITUTIONAL LAW—STATUTES—OBJECT—TITLE OF STATUTE.

Statutes which by their title provide for the incorporation of cities and other units of local government may have as their object anything germane to the functioning of such units of local government (Const 1964, art 4, § 24).

9. Taxation—Constitutional Law—Statute—Object—Statutory Title—Home Rule Cities—Transportation Utility—Property Tax.

Provision for the acquisition by home rule cities of public transportation utilities and anything related to acquisition and ownership, and a provision regarding the taxability of such a transportation utility's property may properly be included in a statute which by its title provides for the incorporation of cities and other units of local government (Const 1963, art 4, § 24; MCLA § 117.1 *et seq.*).

10. Taxation—Payment Under Protest—Refund—Judgment—Interest.

A taxpayer is entitled to interest from the date of payment on all property taxes paid under protest where the Court of Appeals orders a refund of such taxes.

Dissenting Opinion
Beer, J.

11. Constitutional Law — Statutes — Object — Title — Taxation — Exemption.

*The Constitutions have provided for more than 100 years that no law shall embrace more than one object which shall be expressed in its title; therefore the governmental right to tax should never be legislated under an* inappropriate *statute nor be buried in a statute not related to taxation (Const 1963, art 4, § 24; MCLA § 117.1 et seq.).*

Appeal from Wayne, John B. Swainson, J. Submitted Division 1 January 10, 1968, at Detroit. (Docket No. 3,480.) Decided August 26, 1969. Rehearing denied November 26, 1969.

Complaint by the Board of Street Railway Commissioners of the City of Detroit against the County of Wayne and Louis H. Funk, Treasurer of Wayne County to recover certain property taxes paid under protest. Judgment for plaintiff. Defendant appeals. The Attorney General of the State of Michi-

gan intervened as a party defendant on appeal. Judgment modified and affirmed.

*Manuel Zechman,* for plaintiff.

*William L. Cahalan,* Prosecuting Attorney and *Aloysius J. Suchy* and *William F. Koney,* Assistant Prosecuting Attorneys, for defendant.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *William D. Dexter* and *Richard R. Roesch,* Assistant Attorneys General, for intervenor defendant.

Before: T. G. KAVANAGH, P. J.,* and LEVIN and BEER,** JJ.

LEVIN, J.   The plaintiff Department of Street Railways (DSR) has, over the years, paid both local taxes on its property situated outside Detroit's city limits and county taxes in accordance with the 1909 Amendment to the home rule act, which authorized a home rule city to purchase a transportation utility,[1] and which provided:

"When a transportation utility is so acquired, state and county taxes shall be paid thereon as if privately owned, also local taxes on any portion of such property lying outside of the city limits."   CL 1948, § 117.4f (Stat Ann 1949 Rev § 5.2079).

The State of Michigan has not levied an *ad valorem* property tax since 1934.

---

* THOMAS GILES KAVANAGH, Justice of the Supreme Court, assigned to sit on the Court of Appeals from February 27, 1969, "until the work assigned has been completed" pursuant to Const 1963, art 6, § 4, and CLS 1961, § 600.225, as amended.

** Circuit judge, sitting on the Court of Appeals by assignment.

1 PA 1909, No 279 (MCLA § 117.1 *et seq.* [Stat Ann 1969 Cum Supp § 5.2071 *et seq.*]).

In 1965 the legislature eliminated the words "and county" from this statutory provision.[2] Accordingly, after the July 2, 1965, effective date of this amendment, the DSR no longer was obligated to pay county taxes and, no State tax being levied, was obligated to pay only taxes levied by local units of government on the DSR's property located outside of Detroit's city limits.

The DSR claims it is entitled to a refund from the county of Wayne of

(1) 1964 Wayne county taxes, paid in January and February, 1965 (before the July 2, 1965, effective date of the amending act), applicable to so much of the county's fiscal year as remained after July 2, 1965;[3] and

(2) 1965 Wayne county taxes, paid under protest in January and February, 1966.

The county contends that the DSR is not entitled to any refund of 1964 taxes and that the DSR was required as well to pay the 1965 taxes because they were assessed as of December 31, 1964, a date before the effective date of the amendment, even though 1965 taxes did not become payable until a date, December 1, 1965, after the effective date of the amendment. The county contends that the amendment creates an exemption from assessment and cannot affect an assessment made before the effective date. Thus, contends the county, since the amendment affects only assessments made after the effective date, the first assessment affected by the amendment

_____

[2] PA 1965, No 116 (MCLA § 117.4f [Stat Ann 1969 Cum Supp § 5.2079]).

[3] The county terms as "1964 taxes" the taxes assessed as of December 31, 1963, for the fiscal year of the county beginning December 1, 1964, and ending November 30, 1965, which did not become payable until December 1, 1964, and which were payable without penalty in early 1965, even though many (perhaps most) taxpayers paid the tax in 1965 and 11/12 of the county fiscal year is in 1965.

was the assessment made as of December 31, 1965, and, accordingly, the first taxes from which the DSR became exempt were 1966 county taxes.[4]

The county argues that the following statutory provision supports its contention that a change in the taxable status of property after assessment but before the assessment becomes payable does not affect liability to make payment:

"The roll shall be reviewed according to the facts existing on the tax day. The board [of review] shall not add to the roll any property not subject to taxation on the tax day nor shall it remove from the roll any property subject to taxation on said day regardless of any change in the taxable status of such property since such day." MCLA § 211.29 (Stat Ann 1960 Rev § 7.29).

In our opinion the county reads too much into the provision just quoted. This provision was added by PA 1941, No 234. Before this 1941 amendment was enacted, the Michigan Supreme Court had ruled that there was properly stricken from the assessment roll

---

[4] None of the cases cited by the parties is dispositive. In *Mackinac Transportation Co.* v. *Township of Mackinaw* (1913), 175 Mich 418, the Court did not decide that legislation providing a new exemption could not affect past assessments, but rather that in the factual context in which the new law there before the Court would operate the legislature did not intend to permit exemption from the payment of general property taxes for the tax year in which the new law was passed; rather that the first tax year for which exemption could be obtained was the tax year after passage of the new law.

The law there before the Court permitted owners of steam vessels to pay a specific tax in lieu of the general property tax. The cut-off date for payment of the specific tax was December 1. The Court reasoned that the legislature meant to establish as the cut-off day the December 1 preceding the tax year for which the general property tax exemption was sought rather than the December 1 of the tax year itself because otherwise it would not be known until the lien date (which was also December 1) whether a particular steamship would be subject to general property tax. The "troublesome predicament" (p 422) visualized by the Court is not presented in this case. The DSR was not given a choice of taxes, it had no option, it did not have to take affirmative action to avail itself of the exemption from taxation effected by the amendment to the Home Rule Act.

property held at the time of assessment by one who was not tax exempt and thereafter, before the final session of the board of review authorized to review that assessment, transferred to an organization which enjoyed tax exemption. *Township of Grosse Ile* v. *Saunders* (1933), 262 Mich 451. The 1941 amendment was designed to change the law applicable in that kind of situation. Henceforth, a change after the assessment date in the status of the owner (*e.g.,* from exempt to nonexempt or *vice versa*) or in the nature of the property (*e.g.,* its enlargement, improvement or destruction) would not affect its taxability or *ad valorem* value.

The 1941 amendment need not be read, however, as declaring a legislative purpose applicable to all future legislation changing the taxability of persons or property. In our opinion the 1941 legislation does not concern changes in status brought about by new legislation. The 1941 legislature did not mean to tie the hands of future legislatures, nor could it. In determining the legislature's intent in enacting a particular law, we are not encumbered by an absolute rule of construction such as that argued for by the county.

Our task is to determine what the 1965 legislature intended. Did the 1965 legislature intend that the county repay the DSR for county taxes paid in 1965 before the 1965 amendment was enacted? Did it intend that the DSR would, despite the passage of the amendment, be obliged to pay taxes which did not become payable until after the effective date of the amendment and that the benefit of the exemption would be deferred until the time for payment of 1966 taxes?

We have concluded that the 1965 legislature did not intend to require counties to repay municipal

transportation utilities any portion of the taxes paid before the amendment became effective, but it did intend to relieve them from liability to pay taxes otherwise thereafter payable even though the assessment date for the taxes thereafter payable preceded the effective date of the amendment.

We arrive at this conclusion not only because that construction of the 1965 amendment appears to be the more sensible construction and the one most likely to be in accord with the legislature's purpose, but also because, read literally, the act as amended provides that the only taxes thereafter "payable" are State taxes (no longer levied) and local taxes. Thus, after the amendment took effect, county taxes no longer were required to be "paid."

As amended effective July 2, 1965, the statutory provision read: "state taxes shall be *paid* thereon as if privately owned, also local taxes on any portion of such property lying outside of the city limits."[5] (Emphasis supplied.) Accordingly, effective July 2, 1965, the DSR, as to property located within Detroit's city limits, was not required to "pay" anything. Thereafter, all that "shall be *paid*" are "local taxes on any portion of such property lying outside of the city limits." Since the taxes for the year 1965 (county fiscal year December 1, 1965—November 30, 1966) did not become payable until December 1, 1965, and, thus, had not been paid on July 2, 1965, there was no further obligation to *pay* them. 1964 taxes (county fiscal year December 1, 1964—November 30, 1965) had, however, already been paid when the amendment was adopted. In short, the exemption from taxation effected by the 1965 amendment is an

[5] PA 1965, No 116 (MCLA § 117.4f [Stat Ann 1969 Cum Supp § 5.2079]).

exemption from future payment as well as an exemption from future assessment.

The intervenor's contention that the term "local taxes" includes county taxes is rejected. Clearly the legislature, at least for this purpose, distinguished between State, county and local taxes. While the word "local" may for some purposes include a county as well as a city, township, village, *etc.*, in this case it is apparent that the word "county" and the word "local" have different meanings. When the legislature eliminated the word "county," it meant to exempt municipal transportation utilities from the payment of county taxes as to property located both within and without the limits of the parent city.[6]

The DSR alternatively contends that this statutory provision, imposing liability to pay taxes on public transportation utilities acquired by home rule cities, violates Michigan's one-object-expressed-in-the-title constitutional provision (Const 1963, art 4, § 24)[7] and, for that reason, it is entitled to recover the taxes paid for 1964 as well as 1965.

It might have been better draftsmanship to have placed the provision concerning the taxability of municipal transportation utilities in the general property tax law (where one might expect to find it) rather than in the home rule act. There is, however, no constitutional requirement that the legislature do a tidy job in legislating. It is perfectly free to enact bits and pieces of legislation in separate acts or to tack them on to existing statutes even

---

[6] A similar contention involving the words "State taxes" was similarly analyzed and resolved in *Hertzog* v. *City of Detroit* (1966), 378 Mich 1. In that case the Supreme Court declared that the DSR was not required to pay the Detroit board of education ad valorem taxes on its real and personal property situated in the city of Detroit, since, for the purposes of that act, the Detroit board of education was not a State agency levying a "State tax."

[7] "No law shall embrace more than one object, which shall be expressed in its title." Const 1963, art 4, § 24.

though some persons might think that the bits and pieces belong in a particular general statute covering the matter. The constitutional requirement is satisfied if the bits and pieces so enacted are embraced in the object expressed in the title of the amendatory act and the act being amended.

The home rule act[8] and other acts providing for the incorporation of cities and other units of local government have been interpreted as having as their object anything germane to their functioning.[9]

"Most of the great changes in our city organizations have come in under laws which did no more than to indicate by their titles a purpose to incorporate, or reincorporate, or revise the corporate charter of the municipality dealt with. Anything which is meant to form a permanent element in municipal arrangements is pertinent to the incorporation." *Holden* v. *Board of Supervisors of Osceola County* (1889), 77 Mich 202, 204.[10]

---

[8] The complete title of the home rule act is as follows: "An act to provide for the incorporation of cities and for revising and amending their charters." PA 1909, No 279, as amended by PA 1911, No 203 and PA 1913, No 5.

[9] In all the following cases the subject matter dealt with in the act under consideration was held to be within the object expressed in the title: *Hall* v. *Calhoun County Board of Supervisors* (1964), 373 Mich 642 (annexation of territory of one home rule city by another); *City of Detroit* v. *Wayne Circuit Judge* (1897), 112 Mich 317 (requirement that notice be given to city within 3 months of alleged negligent injury; act was entitled: "an act to provide a charter for the city of Detroit"); *Village of Kingsford* v. *Cudlip* (1932), 258 Mich 144, 151, and *Bray* v. *Stewart* (1927), 239 Mich 340, 347 (annexation of territory of a township by a village; the title of the act under consideration in the last 2 cited cases parallels the home rule act, *viz.*: "An act to provide for the incorporation of villages and for revising and amending their charters." [PA 1913, No 95]); *People* v. *Hurst* (1879), 41 Mich 328, 332, 333 (conceding that "there is much awkwardness in including within a city charter provisions affecting judicial proceedings in courts having general jurisdiction outside and beyond the city," the Michigan Supreme Court held valid provisions in Detroit's charter establishing and regarding the recorder's court; the act was entitled, "An act to revise the charter of the city of Detroit"); *People* v. *Pond* (1887), 67 Mich 98 (provision for municipal court in act entitled, "An act to revise an act to incorporate the city of Bay City"). See, also, *Loomis* v. *Rogers* (1917), 197 Mich 265, 271.

[10] This language was quoted with approval in *Common Council of*

So interpreted, the acquisition of a public transportation utility and anything related to its acquisition and ownership properly could be included in the home rule act. A provision regarding the taxability of a transportation utility's property is related to the ownership of such property. Therefore, such a provision does not go beyond the entitlement and does not violate the constitutional requirement.[11]

The trial judge did not allow interest. In our opinion the plaintiff is entitled to interest from the time of payment and, accordingly, interest on the amount to be refunded should be computed from that date.[12]

On remand, the judgment shall be modified to require a refund to the DSR of all *ad valorem* taxes paid in January and February, 1966, by the DSR to the county of Wayne plus interest thereon at the rate of 5% per annum from the time of payment. Nothing shall be refunded in regard to taxes paid

*Detroit* v. *Schmid* (1901), 128 Mich 379, 386 (amendment of act entitled, "An act to provide a charter for the city of Detroit" to require biennial rather than annual elections is valid).

[11] *Cf. People, ex rel. Connecticut Mutual Life Insurance Company* v. *State Treasurer* (1875), 31 Mich 6, 17, 18, where the Court held that a provision for the taxation of life insurance companies could validly be included in an act the title of which stated that its object was "to establish an insurance bureau." The Court observed:

"It was certainly admissible to include any just and pertinent regulations respecting the course of action to be observed by the bureau as a state agency, towards those engaged in the business of insurance; and it was equally admissible to include any just and appropriate provisions for prescribing the duty due to the state in the matter of taxation from insurance companies."

[12] Under our Supreme Court's recent ruling in *Ballog* v. *Knight Newspapers, Inc.* (1969), 381 Mich 527, the DSR would be entitled to receive payment of interest at least from the time its complaint was filed. Under other precedent the DSR would be entitled to interest from the time of payment of the taxes under protest. *Helmsley* v. *City of Detroit* (1963), 320 F2d 476, 481. Since this suit was filed within 30 days of the time of payment in 1966, it will make relatively little difference which of the 2 dates is chosen.

by the DSR to the county of Wayne in January or February, 1965.

No costs, a public question.

T. G. KAVANAGH, P. J., concurred.

BEER, J., (*dissenting*).   The following concise statement of proceedings and facts has been accepted by all parties to this appeal:

"1. The Board of Street Railway Commissioners (herein called the plaintiff) is an unincorporated board of the city of Detroit, a Michigan municipal corporation and under the provisions of the Charter of the city of Detroit (Chapter XIII, title IV) has been and is charged with the duty of acquiring, owning and operating a system of transportation lines, as an agency of and for and on behalf of and in the name of the said city of Detroit, for conveying passengers within and without the limits of the city of Detroit.

"2. Under the provisions of the 'general property laws' (CL 1948 § 211.1 *et seq.* [Stat Ann 1960 Rev § 7.1 *et seq.*]) the real and personal properties of a municipal corporation are exempt from tax assessment, levy and collection.

"3. Under the provisions of the 'home rule act' (CL 1948, § 117.4f [Stat Ann 1949 Rev § 5.2079]) the real and personal properties of a municipally owned transportation system have been subject to an annual assessment and payment of an annual indebtedness in the form of a 'tax', notwithstanding the exemption provisions of the 'general property tax laws', *supra.*

"4. For years prior to August 2, 1965, plaintiff paid such annual 'tax' or indebtedness to the county of Wayne, however on such date, immediate effect Act No 116 of the Public Acts of 1965, whereby the words, 'and county' were deleted from the 'home rule

act', *supra,* was enacted into law, the effect of which eliminated the provisions of the 'home rule act' under which plaintiff had been required to pay the annual 'tax' or indebtedness to the county of Wayne, as aforesaid.

"5. Prior to August 2, 1965, to wit: on January 15, 1965 and February 11, 1965, plaintiff paid such annual 'tax' or indebtedness to the county of Wayne for the fiscal period commencing on December 1, 1964 to November 30, 1965, in the sum of $150,579.84.

"6. After August 2, 1965, to wit: on January 17, 1966 and February 11, 1966, plaintiff paid such annual 'tax' or indebtedness to the county of Wayne for the fiscal period commencing December 1, 1965 to November 30, 1966 in the sum of $146,120.92.

"7. Said 'taxes' or indebtedness so paid prior to August 2, 1965 was [*sic*] not paid under protest and that paid after such date was paid under protest.

"8. On February 15, 1966, plaintiff instituted this action in the circuit court for the county of Wayne for the recovery of the sum of $49,516.57, plus interest, representing the pro-rata sum of the said 'taxes' or indebtedness for the period from August 2, 1965 to November 30, 1965 and for the recovery of $146,120.92, plus interest, for the period from December 1, 1965 to November 30, 1966, which it had paid to the defendants.

"9. On March 7, 1966, after service of copies of the complaint and summons had been had upon defendants, they filed a motion of an accelerated judgment of no cause for action on the grounds that the plaintiff had failed to state a cause of action as a matter of law.

"10. On March 9, 1966, plaintiff filed an answer to the defendant's Motion for accelerated judgment, in which plaintiff denied the allegations of such motion.

"11. Arguments of counsel for the respective parties were submitted on briefs, after which the court,

on January 3, 1967, rendered an opinion in which the court concluded that plaintiff is entitled to recovery of the indebtedness aforesaid, paid the defendants for the periods accruing after August 2, 1965, but not awarding plaintiff interest thereon.

"12. On January 20, 1967, additional argument was had before the court regarding the issue of whether plaintiff was entitled to interest upon the judgment to be entered in its favor and thereafter such issue was submitted in form of briefs by the respective parties.

"13. On March 2, 1967, judgment was entered in favor of the plaintiff and against the defendants in the sum of $195,637.49, without interest, costs or attorney fees.

"14. On March 16, 1967, defendants filed claim of appeal together with notice thereof, removing the cause to the Court of Appeals.

"15. On March 29, 1967, plaintiff filed claim of cross-appeal, together with notice thereof.

"16. Plaintiff and defendants have filed proofs of service of the foregoing and have paid the required entry and appeal fees.

"17. A copy of plaintiff's complaint and first amended complaint, together with all exhibits pertaining to this cause are annexed hereto."

The county of Wayne and the county treasurer, Louis H. Funk, had the following exception to this concise statement:

"With the exception to the use of the term 'indebtedness' instead of 'taxes' and to the statement that plaintiff paid such annual tax or 'indebtedness' to the county of Wayne for 'fiscal' periods rather than 'calendar tax years', defendants accept the concise statement of proceedings as certified to by Honorable John B. Swainson, Circuit Judge."

The attorney general of the State of Michigan, intervenor, had an exception to this concise statement reading as follows:

"'The 'concise statement of proceedings and facts,' certified by the Honorable John B. Swainson, Circuit Judge, and filed in this cause, accurately portrays the background of the pending controversy and except for certain irrelevant legal conclusions contained therein, it is accepted."

Neither of the exceptions is controlling of this opinion. The learned trial judge below rendered his ruling January 3, 1967 granting judgment to the plaintiff, and his opinion reads as follows:

"Defendant, county of Wayne, and its treasurer, move the court to dismiss plaintiff's complaint by filing a motion for accelerated judgment claiming that the 1965 assessment and levy of county tax was validly made pursuant to lawful authority and that *Public Act 116 of 1965*, effective on August 2, 1965, does not have any bearing on the 1965 county taxes, based on the taxable status of said property on tax day, December 31, 1964, but will be prospectively effective for the 1966 tax year.

"Plaintiff claims that its property has been and is exempted from taxation by virtue of the provisions of the said 'tax laws' and that there never has been any tax assessment nor liability for payment of taxes on its property arising out of any provisions of either the 'tax laws', or directly under any other statute dealing with the assessment and collection of taxes on real and personal property.

"The 1965 Wayne county tax upon the real and personal property of the plaintiff was paid by the plaintiff in pursuance of the provisions of the 'home rule act' and not by virtue of any provisions included in the 'tax laws' from which plaintiff is and has been exempt.

"On August 2, 1965, the Michigan State Legislature, by passage of a law given immediate effect, (Public Act 116) amended the 'home rule act' so as to delete the reference to county taxes as those re-

quired to be paid by a municipally owned transportation utility. The result of the enactment of a statute given 'immediate effect' has been to cause plaintiff to forthwith revert to its normal municipally owned non-taxable status. This is the status the plaintiff would have had had it not been for the inclusion of the words 'and county' in the so-called 'home rule act'. The amendment to the 'home rule act' with which we are concerned in this case did not create an exemption in favor of the plaintiff, as defendant argues, but instead it eliminated an exception to an exempt status and the effect thereof was immediate and prospective and not retroactive.

"Plaintiff, not being subject to any obligation for payment of county taxes under the general property tax laws, or any other law, is relieved from the payment thereof commencing with the enactment of Public Act 116 of 1965, and is entitled to a refund of any taxes paid to the county covering any period after August 2, 1965.

"Upon presentation, a judgment for the plaintiff will be entered in the amount of $196,637.49 without interest, and without costs, there being a public question involved."

I would affirm in substance were it not for my holding upon the constitutional issue invoked by the plaintiff in its brief. I note an error in the trial court's opinion and state as a matter of law that PA 1965, No 116 became effective on July 2, 1965. A constitutional issue, of course, may be asserted at any time during the course of a proceeding.

For more than 100 years our constitutions have provided:

"No law shall embrace more than one object which shall be expressed in its title." Const 1850, art 4, § 20; Const 1908, art 5, § 21; Const 1963, art 4, § 24.

Plaintiff here renews its contention that the portion of CL 1948, § 117.4f, *supra,* which imposed upon

plaintiff the obligation to pay an annual sum of money to the county, denominated by statute a "tax", violates the above constitutional provision. I agree and would so hold.

The constitutional provision has often been interpreted and applied by our Supreme Court. From these decisions certain principles applicable to our facts can be readily discerned. Liberal construction with a view to saving legislation rather than striking it down is the directive. *Benson* v. *State Hospital Commission* (1946), 316 Mich 66; *Commerce-Guardian Trust & Savings Bank* v. *State of Michigan* (1924), 228 Mich 316, *cert. den.* (1925), 268 US 700 (45 S Ct 636, 69 L Ed 1164), and cases there cited. The test applied in determining whether or not the body of the act contains constitutionally impermissible provisions is a most generous one as required by the spirit of liberal construction. The title of the act is construed broadly and all provisions in the body of the act "germane, auxiliary, or incidental to" the general purpose as expressed in the title pass constitutional muster. *Loomis* v. *Rogers* (1917), 197 Mich 265, 271. See, also, *Continental Motors Corporation* v. *Township of Muskegon* (1965), 376 Mich 170.

The title to the home rule act,[1] now reads:[2] "An act to provide for the incorporation of cities and for revising and amending their charters" CL 1948, § 117.4f, then, must be germane, auxiliary or incidental to the title of an act whose general purpose was to increase "local governmental control". *School District of City of Pontiac* v. *City of Pontiac* (1933), 262 Mich 338, 349.

---

[1] CL 1948, § 117.1 *et seq.* as amended (Stat Ann 1949 Rev and 1969 Cum Supp § 5.2071 *et seq.*).

[2] Earlier titles as applied to these facts are not materially different. See PA 1909, No 279; PA 1911, No 203.

CL 1948, § 117.4f before PA 1965, No 116, author-
ized the county to tax plaintiff and is the only au-
thority brought to our attention by which the county
could tax plaintiff. Is a statute authorizing the
county to impose a tax upon a public transportation
system germane, auxiliary or incidental to incor-
porating cities and revising and amending their
charters? In my understanding of those terms I
would hold that portion of CL 1948, § 117.4f, here
involved to be unconstitutional as embracing an ob-
ject not expressed in the title. I do not say the
legislature could not enact such a statute, only that
it constitutionally does not belong in the home rule
act.

In summary, the governmental right to tax never
should be exercised under an inappropriate statute
nor tax legislation be buried in a statute not related
to taxation.

I would vacate the judgment of the lower court
and remand the cause to determine again the extent
of plaintiff's recovery now that plaintiff, by virtue
of my opinion, is in the position of one who has paid
an unconstitutional tax.

No costs, a public question being involved.